## No. 8415.

EMERANTHE LATIOLAIS, ADMINISTRATRIX, VS. THE CITIZENS' BANK OF LOUISIANA.

One contracting with a Corporation is thereafter estopped from denying its corporate existence, unless it is for causes that occurred since the contract.

A mortgage creditor may treat as his debtor the vendee of the mortgaged property, who has assumed payment of the debt, without thereby creating a novation and discharging the original debtor. That discharge cannot be presumed, and must be established by clear and positive proof of such intention on the part of the creditor. In default of sufficient evidence to the contrary, it will be presumed that the creditor retained the old debtor at the same time that he accepted the new one.

The notes furnished by a stockholder of the Citizens' Bank for the amount borrowed by him, are not prescribed so long as his Certificate of stock remains deposited and pledged to the Bank, under the provisions of its Charter.

A mortgage granted by a stockholder of the same Bank, to secure the amount borrowed by him, needs not be re-inscribed.

Latiolais, Administratrix, vs. Citizens' Bank of Louisiana.

The said Bank may proceed by seizure and sale to collect the contributions due by a stock-holder. Affirming 25 An. 628.

The sheriff, and not the seizing creditor, is answerable for damage suffered by property under seizure, when the latter is not charged with privity.

APPEAL from the Twenty-first Judicial District Court, parish of St. Martin. *Fontelieu*, J.

Transferred to New Orleans by consent of parties.

----

*Albert Voorhies, Martin Voorhies, Felix Voorhies* and *Edward Simon* for Plaintiff and Appellant :

First—Mortgages are prescribed by thirty years, with the exception of such as are specially excepted. Conventional mortgages are not excepted.

Second—Stock loan notes are prescribed by five years from the date they are exigible.

Third—Executory process cannot issue for the payment of stock contributions unless there be authentic evidence annexed to petition, showing that such contributions are due.

Fourth—The Acts of 1852 and 1853 are unconstitutional, at least so far as concerns stock-holders of the Citizens' Bank who have not given their consent to these acts, which impair the obligations of their contract. Nor can they be enforced unless with the unan-imous consent of all the stockholders.

Fifth—The pact *de non alienando* abandoned by the bank's recognition and ratification of the transfer of the plantation by Duclozel to Sproule.

Sixth—Novation by substitution of debtor,—the bank having accepted Sproule as her stock debtor and ratified the sale of the plantation and bank stock by Duclozel to Sproule.

Seventh—The plea of prescription can be filed at any stage of the cause, even on appeal, even in injunction cases and other conservatory remedies.

Eighth—The Acts of 1852 and 1853, besides, are unconstitutional *in toto*, because they violate the Constitution of 1845, Arts. 118 and 119, and the Constitution of 1852, Arts. 115 and 116 —which require that " every law shall embrace but one object, and that shall be embraced in its title "—and which prohibit to amend, or revive, an act by reference to its title, re-quiring that the amended or revived act be re-enacted and published at length.

*Robert S. Perry* and *Armand Pitot* for Defendant and Appellee :

First—The mortgage prescribes in favor of a third possessor only when the hypothecary ac-tion prescribes, the hypothecary action prescribes only with the right from which it springs. Pont, p. 1090, V. § 1243 ; Grenier, traité des Hypothèques, Vol. 2, No. 510 ; Trop-long, Vol. IV. p. 44 ; 3 An. 334 ; 5 An. 588 ; 8 An. 474 ; 20 An. 403.

Second—If at all, prescription begins to run in favor of a third possessor only after the trans-fer of the possession and the maturity of the mortgage debt. 15 An. 40.

Third—If a stock mortgage, independent of and isolated from its principal obligation be pre-scribed as to the loan note, it is prescribed as to the bonds and *vice versa*, but it cannot be prescribed as to the bonds.

Four h—One who assumes payment of a stock note cannot, properly speaking, be considered a third possessor. Pont, Vol. 2, § 1187, 1249 ; 1 R. 135, 177 ; 6 R. 407 ; 16 An. 187 ; 25 An. 397.

Fifth—Prescription in favor of a third possessor is personal to him.

Sixth—The petition, in an injunction sued out under C. P. 738, cannot be amended before the Supreme Court so as to plead prescription. An amendment to such a petition must always be sworn to. C. P. 738, 304 ; 15 An. 40.

Seventh—An answer in such a proceeding does not change its nature unless judgment for the debt be prayed for. 16 L. 100 ; 19 L. 372 ; 2 An. 470 ; 3 An. 152 ; 22 An. 214.

Latiolais, Administratrix, vs. Citizens' Bank of Louisiana.

Eighth—The pledge of stock is a continuing interruption of prescription as to the stock loan note. 22 An. 107, 117; 28 An. 125.

Ninth—The Bank's officers can change its relations towards its debtors only in the manner its charter indicates.

Tenth—Duclozel's debt has not been novated by acceptance of payments from his debtor. Institution of suit in a *stipulation pour autrui* does not discharge orignal debtor. Sec. 28, Bank charter; 4 An. 409; 11 An. 43.

Eleventh—Section 24, of the Bank's charter, can be avoided only by compliance with Sec. 28.

Twelfth—The same shares of stock cannot be represented by two stockholders.

Thirteenth—The transfer of property and stock, as in this case, may constitute an equitable sale, as between vendor and vendee, but as to the bank it is a nullity. Secs. 24 and 28 of Charter; 1 An. 119; 4 An. 308. In such case the vendor remains a stockholder and debtor of the bank, and the vendee becomes simply a third possessor, and the property remains subject to Sec. 24.

Fourteenth—The Citizens' Bank, in which the State is interested to the extent of several millions, should not be considered entirely as a private institution, nor the laws touching it as private laws.

Fifteenth—Since the forfeiture, in 1842, the State Legislature has constantly recognized the Bank's corporate existence. 7 An. 286. Since the Act 141 of 1852, it has constantly treated and dealt with it as relieved from the forfeiture, and restored to the stockholders under original charter, and stockholders are estopped.

Sixteenth—A stockholder, in whose favor the forfeiture was remitted, cannot, after having administered the bank for twenty-eight years, under the remitting law, deny that law's validity. A stockholder of the bank is an active participant in the bank's affairs. One who has participated in the business of even a corporation *de facto* is estopped. Secs. 9 and 17 of the Charter; 25 An. 228; Whipple vs. Parker, 29 Mich. 369; Swartout vs Mich. Air Line R. R. Co. 24 Mich. 389.

Seventeenth—That the bank was reconstituted by legislation of 1852, 1853, the case in 12 A. 228 is *stare decisis*.

Eighteenth—Act 141 of 1852 antedates Constitution of 1852, and cannot be affected by it further than that Art. 121 of that Constitution ratifies and confirms it.

Nineteenth—Where, in the petition for injunction, the violation of Art. 116 of the Constitution of 1852 is alleged as one of the grounds, the violation of no other article of that, or of any other Constitution, not pleaded, can be considered.

Twentieth—The State had full control of the bank in liquidation, and was empowered to make any changes in its administration the public interests required. 7 An. 286. If we admit the unconstitutionality of Acts 141 and 246, the subsequent Legislature recognizing the present management would still be of force.

Twenty-first—Insufficiency of evidence cannot be urged by way of injunction. H. p. 665, No. 2; p. 667, No. 31; p. 746, No. 45; 26 An. 709.

Twenty-second—The bank has right to enforce payment of contributions and *via executiva.* 7 An. 289; 25 An. 625.

Twenty-third—The forthcoming bond defeats the seizure and the control of the sheriff. 12 An. 617.

Twenty-fourth—The seizing creditor is not reponsible for damages resulting from illegal acts, or negligence of the sheriff. 11 An. 476; 14 An. 26; 32 An. 1181; 33 An. 338.

Twenty-fifth—*Lis pendens* cannot be pleaded in executory proceedings. 28 An. 186.

Twenty-sixth—It suffices that an order of discontinuance be entered on the minutes. It needs not a signed judgment. 14 L. 277.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an injunction suit, arresting an executory process issued by the Citizens' Bank for the balance of two reduced

stock mortgage notes, with interest, and of certain contributions, or calls, on reduced stock.

The plaintiff, in her capacity of administratrix of the succession of C. S. Duclozel, the original mortgageor and subscriber of the notes, has set up numerous defences in support of a prayer for complete exoneration from all liability, many of which were urged in the lower, and others in this court.

We understand that the object of the suit is to have it declared : *that* the Citizens' Bank is a defunct corporation, having no *status* in Court ; *that* the debt sued for has been novated,—a new debtor having been accepted in the place of the original one, who was discharged ; *that* the notes sued upon are prescribed ; *that* the mortgage claimed has no existence, for want of a reinscription ; *that* similar proceedings have been instituted against the delegated debtor, and are pending and undecided ; *that* the asserted pact *de non alienando* has been abandoned ; *that* the contributions demanded are not due and could not be recovered in the executory proceedings against the estate ; *that* the debt claimed, if it existed at the date of the proceedings against the delegated debtor, has become extinguished by a much larger debt due by the bank, which has since arisen, and which is pressed in reconvention.

The injunction was asked and granted, apparently under the sanctioning provisions of article 739 C. P.

The bank answered by a general denial on the trial. Bills of exceptions were taken, which will be hereafter noticed.

From a judgment dissolving the injunction, with a reserve in favor of plaintiff to claim the debt set up against the bank, in a different action, this appeal is taken. The bank has asked no amendment of the judgment.

The salient facts of the case are the following :

In 1837, C. S. Duclozel gave a mortgage, for $15,000, *directly* to the Citizens' Bank, under the terms of its charter, for the triple purpose of securing : 1st. One hundred and fifty shares of its capital stock, subscribed for by him ; 2d. The bonds which the bank was authorized to issue to raise money to form its capital and to carry on its financial operations ; 3d. Loans made to him as a stockholder. The act was seasonably and duly recorded.

In 1869, Duclozel sold the property mortgaged and the stock secured by it to W. P. Sproule, who, as one of the terms of the sale, assumed the liabilities of his vendor to the bank. Sproule sold part of the property and stock to A. C. Graff and J. S. Chalfant, who assumed proportionally his liabilities to the bank.

In 1875, in consequence of non-payment of its debt, under the terms of agreement, and under charges of indebtedness *against Duclozel*, styl-

ing Sproule, Graff and Chalfant "owners and third possessors," the bank issued executory process against the mortgaged property, which at once passed into the sheriff's possession and custody. Duclozel was not made a party. Sproule was served with the process of the court, while the other two, who were absent, were represented by a curator ad hoc. . Subsequently, the property, on bond, was released from seizure and an application was made for the removal of the case to the United States Circuit Court. The bank discontinued the proceeding.

It appears from the evidence received, subject to exceptions, that, while the property was under seizure, and after it was bonded, it sustained material injury in different ways, which the plaintiff values at $20,000, for which indemnity is asked.

After the discontinuance mentioned, the bank instituted these proceedings,—Duclozel having departed this life,—against his succession, represented by the plaintiff as administratrix. She sued out the present injunction.

From the view which we have taken of the case, we deem it unnecessary to pass either upon the consequences of the joining of issue by a general denial by the bank, or upon the bills of exception taken during the trial. We propose to deal with the case as though it had been brought via ordinaria and tried accordingly. Had the bank prayed for amendment the contention would now be set at rest.

We will now proceed to examine seriatim the different grounds of objection or opposition, upon which the plaintiff relies for relief.

The plaintiff is estopped from denying that:

I. The bank had and has a legal status. C. S. Duclozel was the original stockholder, the original mortgageor, the original borrower. By becoming a contracting party in the Act of 1837, he acknowledged the existence of the bank. By that act he subscribed for its stock, gave security for borrowing its money. He secured the stock and the loan, as well as the bonds issuable by the bank, by mortgage on his property.

In 1869, more than thirty years afterwards, he sold the stock which he had acquired in that bank, together with the property which he had incumbered, as is above said, and had the purchaser, as one of the conditions sine qua non of the sale, to assume all his liabilities, actual and eventual, to the bank. By those acts he not only acknowledged the existence of the corporation with which he had contracted, but he warranted that very existence.

In the petition which the plaintiff, as administratrix of his succession, has filed for an injunction, the bank is declared to be a corporation, located in New Orleans, and prayer is made that it be enjoined, cited and condemned to pay damages fixed at $20,000.

All the reasons set forth in the petition, in the oral and written ar-

guments, to show that the bank is a myth and has no *status*, existed, to the knowledge of Duclozel, prior to and in 1869, when he acknowledged and warranted the existence of that institution, in the sale which he made to Sproule of his stock therein and of his property mortgaged to it, and when he imposed upon his vendee the assumption of all his confessed debts and liabilities, present and contingent, to the corporation.

It is settled, by an overwhelming array of indisputable precedents, that, as a rule, one who contracts with what he acknowledges to be and treats as a corporation, incurring obligations in its favor, is estopped from denying its corporate existence, particularly when the obligations are sought to be enforced. It is right that it should be so. If a party have no other objection to oppose to the enforcement of the contract than that the obligee is incompetent to sue, for reasons *anterior* to his contract, or last acknowledgment, he should not be permitted to escape liability. The case would be different where the incompetency is the result of something happening subsequent to the contract, or last acknowledgment of existence and capacity. It is a familiar principle that one cannot be permitted to play fast and loose, so as to take advantage of his own unfair vacillations.

We think it useless trouble to refer to the authorities, which, however, we have taken the pain of reviewing.

How can the plaintiff consistently ask this Court to pronounce that the bank has no status, is incompetent to sue for the enforcement of contracts in its favor, for want of a charter, when during the thirty odd years which elapsed since Duclozel first contracted with it he has uninterruptedly recognized it as a *going* corporation ; and when, during the thirty-nine years which have elapsed since the great law of relief was passed in its favor in order to assist it and its stockholders and others concerned in its welfare and prosperity, the State of Louisiana, whose creature it is, from whom it emanates,—and which perhaps alone, could have taken advantage of any irregularity destructive of its being,—has, by at least *thirteen* statutes, adopted from time to time, up to 1880, continually recognized, proclaimed and acted upon the fact of its existence.

If the doctrine of estoppel can be opposed to a party blowing hot and cold, it is assuredly in the present instance.

II. There has been no novation of the debt or mortgage. The act of mortgage executed in 1837 is emphatic that Duclozel shall continue to be liable and the mortgage shall remain in its integrity, until the debt shall have been paid or until he shall have been discharged. The clauses and stipulations of that act were tacitly reiterated and recognized as in existence and obligatory in the act of sale, in 1869, by Du-

clozel to Sproule, which contained stipulations *pour autrui*, of which it was legitimate for the bank to avail itself, not only on general principle, but also by the tenor of the act of 1837, which is admitted by the petition for an injunction and by counsel, in their brief, to contain the pact *de non alienando*, and by the express terms of its charter, which authorize it to ignore subsequent transfers.

There is nothing in the record to prove that the bank has done any act showing that it considered and treated Sproule, Graff and Chalfant as its *sole* debtors, in consequence of its having discharged Duclozel, or otherwise: the notices issued by a clerk of the bank are in no way indicative of such acknowledgment.

But the plaintiff insists that in its petition in the proceedings first brought the bank ratified the sale made by Duclozel to Sproule, and by the latter to the other parties, in treating them as *owners*. Be that so, but it does not follow, in the absence of either a formal and express or of an implied consent to novate, which should be irresistibly inferred from surrounding circumstances, that it has discharged Duclozel unconditionally, and has accepted those parties as new delegated debtors in his place. *Nemo presumitur donare.* 29 An. 958; 19 An. 212.

Novation is a contract, the object of which is : either to extinguish an existing obligation and to substitute a new one in its place; or to discharge an old debtor and substitute a new one to him ; or to substitute a new creditor to an old creditor with regard to whom the debtor is discharged.

*It is never presumed.* The intention must clearly result from the terms of the agreement or by a full discharge of the original debt. Novation by the substitution of a new debtor can take place without the consent of the debtor, but the delegation does not operate a novation, unless the creditor has *expressly* declared that he intends to discharge the delegating debtor, and the delegating debtor was not in open failure or insolvency at the time. The mere indication by a debtor of a person who is to pay in his place does not operate a novation. *Delegatus debitor est odiosus in lege.* R. C. C. 2188, 2189, 2190, 2192.

The most that could be inferred would be that the bank in the exercise of a sound discretion, proposed to better its condition by accepting an additional debtor to be and remain bound with the original one. The bank had something to lose by discharging Duclozel, but had something to make by accepting Sproule and the others. The testimony shows that the account of the bank with Duclozel was not closed, and that what amounts were paid in after 1869, were placed to the credit of his account.

Commenting upon article 1273 of the N. C., Marcadé says, vol. 4, III, § 769 :

" On conçoit en effet, que quand une nouvelle personne, soit de son propre mouvement, soit sur la présentation de mon débiteur, s'oblige envers moi, au paiement de ma créance, il est sans doute possible que ce débiteur soit pris par moi, à la place de l'ancien qui sera ainsi libéré par la novation, mais il est bien possible aussi que mon intention soit de l'avoir pour obligé en même temps que l'ancien débiteur. Ici encore, d'après notre article, les doutes qui existeraient sur le point de savoir si on a entendu faire une novation, *entraîne négation* de novation, puisqu'il faut que cette novation soit clairement établie."

Larombière, V. 3, on Art. 1275, says :  " Lorsque le débiteur délégant n'a pas été expressément déchargé par le créancier délégataire contre qui, dans ce cas, il n'y a pas novation, ce dernier s'il n'est pas payé par le délégué, aura un recours à exercer contre le délégant. Celui-ci continue, en effet, d'être l'obligé nonobstant l'accession du nouveau débiteur qui a accepté la délégation. Il doit en conséquence payer la dette si le délégué pour lequel il est censé répondre ne la paye pas lui-même.

Le créancier qui n'a point déchargé le débiteur retire ainsi de la délégation faite à son profit l'avantage de conserver ses droits contre le délégant en même temps qu'il en acquiert d'autres contre le délégué. Et ces nouveaux droits il les fera valoir avec toutes les garanties qui peuvent y être spécialement attachées, soit que déjà elles aient existé à l'égard du délégant, soit qu'elles aient été stipulées du délégué au moment de la délégation."

V. also Laurent v. 18, p. 339, n. 315.

See, also, Pothier, Obl. 3 part, ch. 2, No 559, 560; Merli.:, v. ind. de paiement; Toullier 7, No. 278, 283; Gilbert, C. A. on same article and article 275; Duranton, 12, n. 309, Zacharice, t. 2, 323.

The authorities in 19 L. 207 and 1 R. 30, do not bear out plaintiff's theory. In the first case there was a special condition that the notes were discharged and were to be delivered and destroyed before the first payment under the act should be due. A suit, on the *assumpsit*, by the creditor against the new delegated debtor gave effect to the act in all its parts. In 11 A. 93, the ruling in the second case was declared, and we think properly, to be of doubtful authority.

In Jacobs vs. Calderwood, 4 An. 509, which was a suit against an original debtor for the difference between the proceeds of his mortgaged property and the amount of the debt, he pleaded *novation*, resulting from a suit on the *assumpsit* of a substituted debtor and recovery against him in a personal action of a judgment for the deficiency. The Court held that the delegation and the acceptance by the creditor of the *stipulation pour autrui*, did not operate a novation and did not discharge the original debtor. The ruling in 1 R. 301, was found not applicable in

that case; neither is it in the present instance. See, also, 9 M. 270; 16 L. 474; 13 A. 238.

We cannot declare, in the face of the charter of the bank, of the original act of 1837, of the formal text of the law and of the judicial exposition made of its object and purport, that the bank has accepted Sproule and the others in the place of Duclozel, and has discharged him.

III. The notes sued on are not prescribed.

The eleventh section of the charter of the bank entitles a stockholder, on depositing and pledging his certificate of stock, to a credit of one-half of the total amount of that stock; such stockholder, on using such credit, to give his notes for the sum thus lent him.

It is manifest that the notes sued on in this case evidence the use which, under the charter, Duclozel made of his credit. He impliedly contracted with the bank, on obtaining the money which forms the consideration of those notes, to give his stock in pledge, the certificates wherefor the bank retained.

The stock pledged as a security, constitutes a standing acknowledgment, during the existence of which prescription did not run. The debtor consenting to the possession of his property by his creditor, tacitly acknowledges the existence of the debt. This defense is not a new one. Whenever set up in similar cases it has invariably been properly overruled. 21 An. 128; 1 R. 556; 8 R. 146; 22 An. 108, 117; 28 An. 125; O. B. 44, fol. 376 ; O. B. 45, fol. 138 ; O. B. 46, fol. 337, 372. It must have the same fate in the present instance.

IV. The act of mortgage required no reinscription to keep the mortgage alive.

Under the special and exceptional laws which have been enacted for the benefit of this bank, and from the beginning have always received a liberal construction, although in derogation of common right,—it does not lie in the mouth of an original stockholder and mortgageor, to plead against the bank a want of reinscription.

Whatever can be said under article 3369 R. C. C. (3333) touching the cessation of the effect of an ordinary mortgage between the parties, can have no bearing in this case, which is entirely *dehors* the purview of that general provision.

The Citizens' Bank, being a property bank, is entitled to all the immunities which the law allows to such institutions, under which mortgages consented in their favor are dispensed from reinscription. Such mortgages, when once inscribed, remain in force, as long as the principal (the debt) which they are designed to secure, continue in existence, unsatisfied, unextinguished, or until a discharge has been actually

granted. It is not until after extinction of the debt, or after a discharge that the mortgage dies away.

Under the very terms of the Act of 1837, reiterated in that of 1869, such was, besides, the express understanding of the parties, and that understanding being the law regulating their respective rights and obligations, concludes them. C. C. 3284, 3285, 3411.

In Union Bank vs. Dawson, 7 An. 548, it was expressly held, that a mortgage given directly to a property bank need not be reinscribed in order to continue in force, after an original inscription.

The interest of the State in the property banks induced Acts of March 11th, 1842, No. 96, and 27th March, 1843, No. 87, which, without referring to article 3333 of the Code of 1825, have amended it, the former exempting from reinscription stock mortgages in favor of those banks, and the latter forbidding the cancellation, after ten years, of any mortgage of that description.

This double legisla tion, it has been held, although exceptional, is not to be construed strictly, and is to be taken together, the latter enlarging the former. The courts have gone to the extent of saying that all mortgages, not merely stock mortgages, but others, owned by a property bank, are within the statute, whether such mortgages be granted directly or acquired by subrogation. 4 An. 471 ; 10 An. 591 ; 15 An. 630.

The rulings dispensing with a reinscription in cases like that now before the Court, have become a rule of property which cannot be questioned or disturbed.

V. The proceedings instituted by the bank to seize the mortgage property in the hands of Sproule and the others, cannot be pleaded, as *lis pendens.* Duclozel had not been made a party to them. They were discontinued previous to the institution of the present ones. The objection that the order of discontinuance on the minutes is unsigned is untenable. 14 L. 277 ; 12 An. 642 ; 28 An. 186.

VI. The pact *de non alienando* was not abandoned.

On the contrary, it was carried out by the proceedings against Sproule and the others. Admitting that it was, however, what is it to the plaintiff, who is the administratrix of the succession of the original mortgageor, whether it ever existed at all ? It can, under no circumstance, be insisted upon as a ground to arrest the writ of seizure and sale, or seek exoneration from the debt, or mortgage.

VII. The bank had a right to claim the contributions, under the act on the subject. The question whether there was sufficient authentic evidence to justify the *fiat* of the District Judge, should have been presented on appeal and not on a petition for an injunction. H. D. 665 No. 2 ; 667 No. 31 ; 746 No. 45 ; L. D. 312 No. 10 ; 26 A. 709. Be that

as it may, however, we think under the authority in the case of the Citizens' Bank vs. Deynoodt, 25 A 628, the decree of seizure and sale was properly made. V. Act 141 of 1852, Sec. 4 ; Act 246 of 1853, Sec. 1 ; Act 45 of 1873 ; also 28 An. 125; 7 An. 289.

VIII. The damages claimed should not be recovered. The plaintiff shows herself that ever since 1869 Duclozel has ceased to own the property ordered to be seized and sold. If it sustained injury for which the bank might be made responsible, the question would arise whether it could be so held, otherwise than in an action by the owners of it. They are not before us.

If it be true, however, that the plaintiff can officially, as a creditor of theirs, with vendor's privilege and special mortgage, be permitted to champion for the benefit of the estate which she administers, assert and vindicate the right of such owners,—no recovery should be had. The right of action if it exist, could be exercised, not against the bank which is not charged with *privity*, but against the sheriff, if the damages were occasioned while the property was in his keeping and custody, and by his negligence and fault. This right of action would not exist for injury or damage sustained subsequent to the bonding of the property and its consequent release from seizure. 14 An. 26 ; 11 An. 476 ; 12 An. 616 ; 32 An. 1181 ; 33 An. 338.

The District Court erred in reserving to plaintiff the right of claiming damages in a different action.

The bank pleaded the general issue. If it did not intend to try the suit as to the item of damages, it should have excepted to the proceeding in that respect. The plea would have been sustained, as such a claim cannot be validly incorporated in an opposition for an injunction, without bond, under article 739 C. P. See, also, 738.

The appellant has prayed for the reversal of the judgment of the lower court and for the damages claimed. We have found against her in the positions which she has taken. In the absence of a prayer for an amendment of the judgment on the part of appellee, we are bound to let it remain undisturbed, although we find it incorrect in one particular.

It is, therefore, ordered and decreed that the judgment appealed from be affirmed with costs.