The opinion of the court was delivered by
Breaux, J.
This is a suit by appellee against appellants as co-partners to recover for goods sold and delivered.
Defendants plead the general issue, and in support of their existence, as a corporation, they interpose the further plea of estoppel.
The defendant, with another shareholder, not made a party, procured a charter of incorporation for the Teche Railroad and Sugar Company to build and operate a line of railway from “Huron Plantation” in St. Martin parish to stated points; also to own or lease plantations, to grow cotton, rice and sugar, to deal in securities and merchandise, to operate sugar houses and refineries.
*1150 One of the defendants, charter member, was president, another vice president, another secretary, and the last, the treasurer, was not sued.
In the resolutions of the board of directors and in all the dealings and orders of the company the word limited was used. The accounts were made out and rendered to the defendants in the name of the company, “limited.” The plaintiffs were aware that Mr. S. A. Knapp was the general manager and president, and that the store to which the goods were sold was kept on the Huron plantation. The two clerks, under the directions of the president, were to sell (the manager and president testified) only to the employees. These clerks have not testified.
Three (3) witnesses testify that it was a public store for all comers.
About one year after the company had been in operation, it became embarrassed because of failure to negotiate an expected loan in England on mortgage bonds.
On the motion of a foreign creditor it was placed in the hands of a receiver, under appointment of the United States Circuit Court for the Western District of Louisiana. The plaintiffs, with other creditors, filed a motion in that court to vacate the receivership, alleging that there was no ground for the appointment; further, that the corporation, though incorporated as the Teche Railroad and Sugar Company, did business in the name of the Teche Railroad and Sugar Company, Limited. The motion, without action by the court, is of record.
AS TO MERCHANDISING.
The corporate name was, as alleged, the Teche Railroad and Sugar Company. It is a disputed point whether the store was for the use of the plantation, exclusively as a supply store, or a general country store in which goods were sold to the general public.
We will take up and decide the only question of fact in the case before taking up and deciding points involving questions of law.
Goods for the store in question were bought from the plaintiffs and sold at defendants’ counters. That they were sold and delivered by the plaintiffs is not disputed, and it is admitted that they were sold by the defendants as just stated. The defendants’ position is that the corporation, without the word “limited,” could lawfully *1151 have been created for the real purposes and business of its organization, viz.: building and operating a railroad, a sugar refinery, and could own a store as incidental for the purpose of supplying the employees engaged by the company. The position, as stated, may perhaps be correct, but we do not think it entirely covers the issue of fact. As we appreciate the evidence the sales were not limited to the employees.
One of the witnesses, a commercial traveler, testified that the merchandise sold by him to defendant consisted of dry goods, notions and other articles, and he saw dry goods sold to ladies.
Another witness, who was at times employed by the defendants, testified that he bought for cash for his own use at this store.
We do not infer from his testimony that he was always employed on the plantation when he made his purchases. He says that the defendants kept an assortment of groceries, hardware, tinware and dry goods; that they were sold to the public, as well as to the employees.
This testimony was, in every particular as to its being a public store, corroborated by two other witnesses, who, themselves, bought from the store when not employed by the defendants.
Defendants’ clerks were not called as witnesses by their employers. One of the witnesses for the defendant, in general terms, without any direct reference to the details of the business, contradicts the evidence for plantiffs, as to its being a store open to all comers.
The defendants aver that the store was a commissary department of the enterprise.
The plaintiff denies.
The burden of proof is with the one who seeks to support his case by a particular fact; when that fact lies more particularly within his knowledge. Best on Evidence, Sec. 275.
The rule is not without the exception, as is shown by the following:
“ I have always understood it to be a general rule that if a negative averment be made by one party, which is peculiarly within the knowledge of the other, the party within whose knowledge it lies and who asserts the affirmative is to prove it, and not he who avers the negative.”
But in Elkin vs. Sanson, 13 M. and W. 655-662, the judge on this dictum said: “I doubt, as a general rule, whether these expressions *1152 are too strong. They are right as to the weight of the evidence, but there should be some evidence to start it in order to cast the onus on the other side.” Ib., Sec. 300.
The evidence was positive that it was a store at which goods were sold to the public, and sufficient at least to shift the burden of proof, and render it necessary that the defendants should, through their clerks and other employees, prove needful facts in support of their contention, particularly within their knowledge. Best on Evidence, Sec. 275. Act No. 102 of 1880.
This brings us to a consideration of the general statute authorizing the formation of corporations, for the constructing of railroads, and for opening and maintaining other enterprises. That statute does not apply to, merchandising. Merchandising is the only question before us. We have naught to do with the railroad and agricultural enterprises, properly organized we will assume under the terms of the statute. The mercantile affairs are all that concern us. They could not be conducted by a corporation organized under the statute in question. It was prohibited.
In view of the (in effect) clearly expressed prohibition the defendants could not under that statute claim corporate existence as to the merchandising.
act no. 36 ok 1888.
We are led from the argument to believe that the defendants claim to have acted, in so far as relates to merchandising, under the more recent general statute of 1888.
The act authorizes the formation of corporations for certain purposes and requires a name to be selected.
In the section following, the word “limited” is made part of the name.
Evidently that word was not added by the defendants owing to the want of ordinary care or prudence in organizing. The omission of the word, the law reads, shall render also every person participants in such omission liable for any indebtedness, damage or liability therefrom. The Legislature has power to impose, under the limitations, any condition upon the enjoyment of the franchise, which the General Assembly deemed necessary or to the public good.
In all the laws relating to the subject the General Assembly requires a name, and the most recent statute requires that the word *1153 “Limited” shall be the last word. They also require that the act of incorporation shall be recorded. In the case here, unless the last word is used as authorized by the act of incorporation, it would serve no purpose to use it in business.
The failure to insert the word intended, as a note of warning, is a technical error, which, under the terms of the statute, affects the interest of the directors.
The statute has made it a condition precedent to corporate existence. It is not a law peculiar to Louisiana. Joint stock corporations are partnerships except in form. The rights and liabilities of partners under the English statutes, substantially similar, were discussed by Justice Lindley (“Treatise on the Law of Partnership”) in this connection, and he says that although intending to form a limited partnership, the parties may unknowingly so act as to make themselves liable to third parties as general partners.
The State of New York has a similar statute, and the use of the word “ limited ” is required; the penalty is very much the same as it is here.
The last statute, Act No. 36 of 1888, was preceded by legislation prohibiting corporations from merchandising.
The laws in regard to partnership, hedged in partnership ventures with restrictions. Thus a universal partnership could not be created without writing signed by the parties and registered. C. C. 2834.
The partnership in commendam required for its existence a written act recorded, otherwise the parties in eommendam are personally responsible. C. C. 2845.
Under the influence of the laws, the legislator was conservative, and incorporated in the last statute, 1888, the conditions precedent to corporated existence and limitations found in the general laws upon the subject mother States, as well as in England.
The appellants have sworn that they did not know that the word had been omitted from the act of incorporation.
Mr. Bigelow, p. 349 of his work on Estoppel, says: “ Directors of corporations being bound to know the proceedings of the body, can not escape an estoppel by the allegation of ignorance.”
The defendants urge that the State alone can question corporate existence. That may be in cases in which it is sought to have a charter forfeited, but here the suit is to enforce the personal liability of officers of a corporation for corporate debts which they have *1154 incurred, because of their violation of the general statute. It may be maintained by creditors without direct proceeding taken at the instance and in the name of the State. The State has no interest in the indebtedness, and no reason arises, in consequence, requiring her intervention in the matter.
ESTOPPEL.
Lastly, it is argued that the plaintiffs are estopped. Estoppels by ■conduct and by record are pleaded. In our opinion neither applies. It is not shown that with knowledge of the irregularities, the plaintiffs agreed to sell goods to the corporation, or with that knowledge, they did some act showing acquiescence. They would not be benefited by these sales — on the contrary, they would be losers if they were estopped. The possibility of recovering their own (an amount justly due), is not the benefit, as we understand, to which reference is made in a number of authorities in holding that neither party will be heard to allege the invalidity of a corporation while retaining its fruits. In the courts of this State the decisions held that shareholders and mortgage debtors can not defend themselves against a claim on such contracts in a suit by the corporation by alleging irregularity in the organization. That by making a contract, for instance as a mortgage to secure the payment of a promissory note, the mortgagor precludes himself from questioning the fact of the proper organization of the corporation. It was decided that the defendant was estopped when the defence was in its nature unconscionable.
The plea of estoppel has never been applied to the creditor of a corporation seeking the payment of his claim. In one case the debtor has received a benefit that estops him; in the other the creditor has sued to recover an amount due by those who have failed to avail themselves of the terms of the statute.
The motion to vacate the receivership made in the United States Court contains no allegation which cures the absolute informality in question.
Substantially the informality was alleged, and although not followed by averments setting forth the indebtedness arising because of the informality, plaintiffs are not concluded.
The motion did not,have the effect of releasing any of the debt- *1155 oi’s. There is no ground to presume a release, either because of the action as a whole, or because of any of the allegations contained in the motion.
EQUITY.
If there has been any hesitation on our part in reaching a conclusion, it was after giving consideration to thoughts quite suggestive and prettily expressed by counsel in referring to the spirit of equity of modern jurisprudence, which they invoke as having sought to have justice, pure and simple, administered between man and man; which has sought to rise above matter of form, to keep abreast the advance of other sciences, and to make the law loved rather than feared. It was forcibly said at the bar that the law has bidden adieu to the era of snares and traps into which the innocent and unwary could be led to their own undoing. Everywhere equity is predominant. These are appealing thoughts. But if the law has determined a matter with all its circumstances, equity can not inter-meddle.
We have seen that the statute is, in terms, mandatory and provides the penalty in case of non-compliance. If we were to leave the ¡plain, letter and the spirit of the statute, as we understand it, and be governed entirely by considerations of equity, the case would not be entirely with the defendants.
In organizing, or rather attempting to organize, they must have created the belief that under their management obligations would be discharged.
The evidence discloses that in good faith the defendants were disappointed, and that the failure to meet obligations was owing to unforeseen causes. None the less, those who seek to recover their own from the disappointed and unfortunate are not always, and under all circumstances, without some equitable rights.
Returning to the doctrine of estoppel, we conclude by quoting from Eaton vs. Wilker, 48 N. W. Rep.
“ Hence if an organization is completed where there is no law, or an unconstitutional law, authorizing an organization as a corporation, the doctrine of estoppel does not apply,” and by adding that these considerations must apply with greater force to corporations organized in disregard of the plain letter of the statute, and of the penalty imposed for its violation.
The judgment appealed from is affirmed.