Bentley v. Bentley.

SUSAN A. BENTLEY, Defendant in Error, v. JOHN T. BENTLEY, Plaintiff in Error.

Kansas City Court of Appeals, January 11, 1915.

1. MARRIED WOMEN: Separate Property: Money Obtained by Husband Without Written Consent of Wife: Evidence. Where a wife who had allowed her husband to take possession of and handle her money, discovers that he has not repaid same, and sues to recover the amount so obtained, it is not incumbent upon her to establish with particularity the precise amounts obtained by the husband, the dates thereof or the purposes for which they were used. As the husband occupied a position of trust and confidence, the wife was only required to establish a prima-facie case by showing in a general way that she had money, that he was in charge thereof and had used it or a portion thereof. It was then upon him to explain the series of transactions and to show that he had repaid her.

Bentley v. Bentley.

2. ———: ———: ———: ———. Especially is this true where the husband admits he received a certain amount and says he has repaid it, and the judgment is for no more than the amount admitted to have been received.

3. ———: ———: ———: ———. Where this is the case, and the evidence as to repayment is uncertain, unsatisfactory and not supported by anything other than the bare statement of the husband that he has paid it, the wife's suit will not be defeated on the theory that the evidence shows she did not have enough money to make certain admitted expenditures and have the amount left which she was shown to have had, unless the husband repaid her, since it is undisputed that she did have a large amount of money, that it was at interest, and the whole series of transactions in question are obscured by the mists of the past, and such theory of payment is based on an arithmetical calculation based on many uncertain and unknown elements.

Error to Bates County Circuit Court—*Hon. C. A. Calvird*, Judge.

AFFIRMED.

*Smith & Chastain* for plaintiff in error.

(1) The court erred in admitting in evidence over defendant's objection the account, or what purpoted to be the account, of the plaintiff with the Farmers Bank of Bates county, Missouri. Underhill on Evidence, pp., 79-84, secs. 58-60; Jones on Evidence (2 Ed.); pp. 722-723, secs. 571-572; 17 Cyc. 377-397; Nelson v. Nelson, 90 Mo. 1; Anchor Milling Co. v. Walsh, 108 Mo. 285; Robinson v. Smith, 111 Mo. 205; Borgess Investment Co. v. Vette, 142 Mo. 560; Martin v. Nichols, 54 Mo. App. 594. (2) The marginal notations on the account showing against certain items, Jno. T., were improperly introduced in evidence, they not being proper matters of record. 17 Cyc. 379 (c); Perrine v. Hotchkiss, 58 Barb. (N. Y.) 77.

*C. A. Denton* for defendant in error.

(1)    Under appellant's answer and the evidence introduced by respondent, the burden was cast upon the appellant to show the individual amounts that he had used, the dates of his using the same, and that he had repaid all of them.    These being, from his position of confidence and trust, matters that were peculiarly within his knowledge.    Greenleaf on Evidence (11 Ed.), sec. 79.

(2)    Encyclopedia of Evidence, pp. 797-798; Gardner v. Springfield Gas & Electric Co., 154 Mo. App. 679, 135 S. W. 1025; Lehman et al v. Knapp et al, 20 S. 674; Railroad v. U. S., 139 U. S. 560, 35 L. Ed. 269.

TRIMBLE, J.—In this action a wife sues her husband, John T. Bentley, to recover money belonging to her as her seperate property which she alleges the husband, on and after their marriage, took possession of and assumed to and did handle for her, and, while doing so, appropriated it to his own use and benefit without her consent in writing.

The husband's answer averred that "whatever money, if any, belonging to the plaintiff, this defendant ever took possession of, assumed to, or did handle, and whatever, if any, of personal property of the plaintiff this defendant ever did take possession of, assumed to, or did handle this, defendant long since accounted for and paid over to the plaintiff herein." The reply denied this.

The court found that of the wife's money so obtained and handled by the husband, the sum of $500 was obtained and used by him after the marriage and that he had not repaid her this amount, and that she had demanded it of him long prior to the institution of suit.    Judgment was rendered against him for that

amount with interest and costs. He thereupon brought the case here on a writ of error.

His principal contention is that the evidence shows that the wife's money had been fully repaid to her. This contention seems to be based not so much upon any evidence affirmatively showing that the husband repaid it, (although he swears that he did), as upon a conclusion drawn from the claim that, considering the amount of money the evidence shows the wife had and the amount she admits having expended, the husband must necessarily have repaid what he used else she would not have still had the amount now remaining to her. It is also contended that the wife's evidence did not show with any degree of certainty that the husband obtained the amount of money she claimed he got, nor that he used it for himself. It is true the wife was unable to specify with certainty the several separate amounts appropriated and used by her husband or the dates on which they were obtained, and she so alleged in her petition. This was because she allowed him to handle her funds and use her money, and trusted to him to look after her affairs for her from the date of their marriage in 1895 down to 1900 when they seemed to have begun to disagree or become unhappy in their marital relations. This continued until possibly 1913, when this suit was brought. A petition for divorce seems also to have been filed but was afterwards dismissed. The alleged obtention and use of the money by the husband was between July, 1895, and September, 1896. At the time of the trial, the evidence as to the precise amounts obtained, and when, was difficult to secure. The wife could not remember these particulars and her bank account, as shown on the books kept by the bank, did not disclose this information, and would not do so unless the checks thereon were produced showing what checks were drawn by her husband and for what purpose. When the estrangement began to manifest itself in 1900, the

wife investigated and found that her husband had not repaid the moneys he had used and she demanded that he do so. She also footed up the checks drawn thereon by her husband and which had been returned by the bank and which she had at that time, and there was evidence to the effect that these checks aggregated $800. There was also evidence tending to show that these checks were afterward taken from her trunk, and the wife testified to statements made by her husband which clearly tended to show that he ransacked her trunk and took them. The suit was for $800 with interest from the several dates at which it might be found the husband obtained the money.

Under these circumstances, we do not think it was incumbent upon the wife to establish with particularity the precise amounts obtained by the husband, the dates thereof, or the purposes for which they were used. As the husband occupied a position of trust and confidence, it was only incumbent upon the wife to establish a prima-facie case against him by showing in a general way that she had money and that he was in charge thereof or had used it or a portion thereof. This would require him then to explain the entire series of transactions and to show what the amounts checked out were for and that he had repaid her, especially since they were matters entirely within his knowledge. [Selina etc. R. Co. v. United States, 139 U. S. 560, l. c. 567; Lehman v. Knapp, 20 So. 674; Gardner v. Gas and Electric Co., 154 Mo. App. 666; Greenleaf on Evidence, sec. 79.]

In addition to this, the answer of defendant was practically a plea of payment. It says if he obtained any money, he has long since repaid it. And the husband, in testifying, admitted that about the first or second year after the marriage he, by verbal consent of his wife, got $500 or more of her money and used it. And it is on this admission of the husband that the court found for the wife, with interest from the date

the court found demand was made therefor. The husband swears he paid it back, but there is nothing to show that he did except his bare statement. He says he paid it in currency he received from the sale of cattle. But he could not tell the year, nor the time of day, nor where, except that it was in the house at home. In a deposition given prior to that, taken in the divorce case, he said he paid it to her out in the yard. He could not remember how he was paid for the cattle, whether by check or in currency. He said he deposited "a little" of it in the bank to his credit and took the rest ($500 or more) out to his wife and paid her all he owed her. He admitted drawing checks on her account, but said that all he ever drew were "authorized" by his wife. The testimony of the wife's son by her first marriage shows that he told him he had gotten $800 of her money "which they would never see." This was not denied by the husband.

But it is said the evidence offered by the wife shows that she did not have enough money to make the expenditures it is admitted she did make, and have the amount left which she was herself able to lend after their estrangement, unless her husband did repay her as he claims. We do not agree with this contention. The evidence tends to show that prior to their marriage she had inherited money from her father's estate which had been at eight per cent. interest for more than three years prior to the time her husband got the $500 he says he got, which was either in August, 1895, or September, 1896. She also got some money from her mother's estate which had also been at interest for several years. The amount the wife testified to having was not the total, including interest, but was merely the principal. The fact that the bank account did not show that she had all this money at any one time is not sufficient to overthrow all the other evidence in relation thereto. Her money was being

lent out, prior to her marriage, by Mr. Kipp, cashier of the bank. The account does not show that she ever at any one time had even the amount of money which the husband concedes she had, and which she undoubtedly must have had in order to purchase the house she bought in Butler. Besides, before she made the expenditures shown, her money drew some interest. So that, taking all the circumstances into consideration, the fact that she undoubtedly did have a large sum of money at interest, that her husband did get $500 of it as far back as 1895 or possibly in September, 1896, and that his statement that he paid it back is unsatisfactory and unsupported by anything other than his own assertion, and that the whole matter covers a long series of small transactions now long since obscured in the mists of the past, and that he was her confidential agent occupying a place of trust and confidence toward her, casting the duty upon him to explain and satisfactorily show he had repaid all that he obtained, we do not think the husband can successfully claim there was no case made against him or that he has established payment on a theory of arithmetical calculation based on so many uncertain and unknown elements.

It is true the court did not find that the husband had obtained and used as much as the wife claimed he did, but this does not show that her testimony is to be disregarded altogether or that the court must necessarily have believed she did not have enough money to make the expenditures she did and at the same time furnish her husband with the amount she claimed he got. The inference from the court's finding is rather that he did get all she said he got but that a portion of it was repaid. Especially is this the case when the husband admits he may have checked on her accounts at times, but if he did he paid her back those sums. The court was not compelled to accept all or none of either of the litigant's testimony. It had the right to accept a part and to reject a part. So that, there is

no necessary inconsistency in the court failing to find for the full amount of the wife's claim and yet giving judgment for a portion thereof.

We do not see wherein the husband can complain of the wife's introduction of the bank books. They were admitted, but afterwards the court excluded them, and the judgment is based on sufficient testimony outside thereof. So that it cannot be said the judgment is based on the evidence of the bank books notwithstanding the trial court's formal exclusion of them. The pencil memoranda on the bank account were inadmissible since they were not satisfactorily explained, but, under all the circumstances and in view of the well-known methods of modern business and bank book keeping, and the absence of anything suspicious about the books, and the fact that they were duly identified as the books of the bank, we fail to see why the books themselves showing the accounts of the parties litigant were not admissible in evidence. And one of the husband's contentions now that the judgment is erroneous is based on the showing made by these books.

The claim that excessive interest was allowed on the $500 is untenable. The petition asked for interest from the time the money was obtained. There was evidence to the effect that the husband told the wife if she would allow him to use a part of the money as he needed it, he would pay her interest the same as any one else. If this were believed, he owed interest from the time he got the money. However, the court only allowed interest from the time demand was found to have been made. We do not think there was no evidence that demand was made as far back as the court found. The wife could not specify the date of the first demand, it is true. But the evidence shows that in 1900 she began to have a controversy with her husband because he had not replaced her money. She says she repeat-

185MoApp38

edly demanded it of him. It is inconceivable that a woman would quarrel with her husband for not repaying her money he had used and yet made no demand therefor. The court, however, did not allow interest as far back as that.

The judgment should be affirmed. It is so ordered. All concur.