NATIONAL OIL WORKS, INC., v. KORN

BROS., Defendants and Appellants

---

(Mar. 28, 1927. Opinion and Decree.)
(Apr. 11, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Corporations — Par. 10, 160, 177.**

The fact that defendant signed a document intended to be a contract with a supposed corporation does not estop him from denying the corporate existence of the other party to the intended contract, provided plaintiff acts promptly and protests corporate existence of defendant before he receives any benefits from said contract.

2. **Louisiana Digest—Corporations—Par. 8, 191.**

If it be proved that plaintiff had no legal existence, at the time the purported contract was signed, the so-called contract will be declared null and void and suit for damages for breach thereof will be dismissed.

Appeal from Civil District Court, Division "B". Hon. M. M. Boatner, Judge.

Action by National Oil Works, Inc., against Korn Brothers.

There was judgment for plaintiff and defendants appealed.

Judgment reversed.

Dart, Kernan & Dart, L. C. Guidry, of New Orleans, attorneys for plaintiff, appellee.

Samuel Wolf, of New Orleans, attorney for defendants, appellants.

JONES, J. This is a suit for one hundred twenty-five ($125.00) dollars damages for breach of plumbing contract alleged to have been made by plaintiff with defendants on July 26, 1922.

Defendants answer denying that there ever was a contract and averring that they had made every effort to have purported contract duly and properly signed by plaintiff, but their requests had been refused and they had, therefore, declined to have further transaction.

The pleadings are as follows:

The petition was filed on March 2, 1923, in the name of "National Oil Works, a corporation created and existing under and by virtue of the laws of the State of Mississippi and authorized to do business in the City of New Orleans." The affidavit to the petition is sworn to by Peter A. Cooney, as the president of National Oil Works, Inc. The suit is entitled National Oil Works, Inc., and the alleged contract, which is attached to the petition, is made in the name of National Oil Works, Inc., and is signed by that name and also by defendants.

The citations were issued in the name of National Oil Works, Inc., and the defendants, on March 19, filed exceptions of vagueness, calling the plaintiff, National Oil Works, Inc. These exceptions of vagueness were maintained by the judge on April 3, 1923, with leave to amend and on April 30th of the same month, plaintiff filed a supplemental petition in the same name attaching thereto plans and specifications.

On May 29, 1923, defendants filed an answer denying that either National Oil Works or National Oil Works, Inc., was a Mississippi corporation with authority to do business in New Orleans. They further

denied that the copy of the contract attached to plaintiff's petition was identical with that which had been given to them. They admitted that unsigned contracts in duplicate already written out in the name of National Oil Works, Inc., had been tendered to them by plaintiff's architect; that they had signed these documents and left them at the office of the architect for the signature of plaintiff and that later they had received their copy simply signed National Oil Works. They further averred that upon receipt of this document that they called upon the architect for information as to the status of the National Oil Works and that they were told that Peter A. Cooney was the president of National Oil Works, Inc.; that they made several efforts to see the said Peter A. Cooney, but were finally told by the architect that Mr. Cooney did not wish to see them and they thereupon notified said architect that they had no contract and would do nothing further in the matter.

On June 27, 1923, plaintiff filed a second supplemental petition saying that in the original petition, petitioner had alleged its name to be National Oil Works, Inc., but petitioner now says that National Oil Works & Mill Supplies Co., Ltd., is a corporation duly organized and existing under the laws of Mississippi and that said incorporation was certified to by the clerk of the Chancery Court of Harrison County on August 31, 1918; that after said date the board of directors of said corporation changed its name to National Oil Works, Inc.; that petitioner is now informed that while its action is legal the name of the corporation cannot be changed until the resolution of the board authorizing the change has been recorded with the clerk of the Chancery Court and duly published; that being uncertain as to the validity of the action of said board, petitioner desires to substitute the name National Oil Works

& Mill Supplies Co., Ltd., instead of National Oil Works, Inc.

Petitioner further alleges that National Oil Works & Mill Supplies Co., Ltd., and National Oil Works, Inc., plaintiff, are one and the same corporation and the identical legal entity created under the laws of Mississippi and authorized to do business in the State of Louisiana.

Petitioner prayed that it be allowed to file the supplemental petition and that National Oil Works & Mill Supplies Co., Ltd., be designated as the name of plaintiff and that there be judgment in its favor. The judge signed the order allowing the filing of the amended petition.

On July 9th defendant filed exceptions to this second supplemental petition as follows:

(1) Want of legal citation, because the citation gives the name of plaintiff as National Oil Works and there is no such plaintiff.

(2) That said supplemental petition is too vague and indefinite for defendants to answer in that it sets out a change in party plaintiff without legal ground and causes a multiplicity of parties plaintiff after issue had been joined.

(3) That said supplemental petition shows no cause or right of action.

These exceptions were overruled on February 5, 1924, and on February 16th of the same month defendants filed an answer denying on information and belief the averments of the second supplemental petition.

The case was tried in the lower court on April 24, 1924, and judgment was rendered in favor of plaintiff and suspensive appeal was taken to this court.

The sole question before us is the validity of the contract.

On the trial of the case plaintiff introduced a certified copy of a charter passed before a notary public in this city, on February 14, 1923, wherein a new corporation was formed called National Oil Works of Louisiana, Inc.

Article three of this charter shows that this corporation was particularly and expressly organized for the purpose of taking over the business, property, assets, stock, good will, etc., of National Oil Works, Inc., a corporation organized under the laws of the State of Mississippi, first under the name of National Oil Works & Mill Supplies Company, Ltd., and which charter has been subsequently amended.

Plaintiff also introduced in evidence a certified copy, signed by Secretary of State, of a certificate of incorporation of National Oil Works & Mill Supplies Company, Ltd., organized under the laws of the State of Mississippi, dated September 19, 1918, authorizing the said corporation to do business in the State of Louisiana, and also a certificate from the same official saying that Peter A. Cooney, of New Orleans, had been designated as the agent of said corporation for service of papers, etc.

Defendants introduced into evidence their copy of the contract which was signed National Oil Works.

On the trial of the case Mr. Cooney testified that National Oil Works, Inc., had been doing business in Louisiana for twenty years and that it had purchased property in that name.

In his brief and argument in this court, plaintiff contends that defendants are estopped to deny the existence of the corporation and quotes in support of this argument a paragraph from the case of Latiolais vs. Citizens' Bank of Louisiana, 33 La. Ann. 1449, reading as follows:

"It is settled, by an overwhelming array of indisputable precedents, that, as a rule, one who contracts with what he acknowledges to be and treats as a corporation, incurring obligations in its favor, is estopped from denying its corporate existence, particularly when the obligations are sought to be enforced. It is right that it should be so. If a party has no other objection to oppose to the enforcement of the contract than that the obligee is incompetent to sue, for reasons anterior to his contract, or last acknowledgment, he should not be permitted to escape liability. The case would be different where the incompetency is the result of something happening subsequent to the contract, or last acknowledgment of existence and capacity. It is a familiar principle that one cannot be permitted to play fast and loose so as to take advantage of his own unfair vacillations."

That was a suit brought by the Citizens' Bank of Louisiana to foreclose a mortgage and the defense was made that the Citizens' Bank had not been properly incorporated and in the paragraph just before the one quoted by plaintiff the Supreme Court uses the following language:

"All the reasons set forth in the petition, in the oral and written arguments, to show that the bank is a myth and has no status, existed, to the knowledge of Duclozel, prior to and in 1869, when he acknowledged and warranted the existence of that institution, in the sale which he made to Sproule of his stock therein and of his property mortgaged to it, and when he imposed upon his vendee the assumption of all his confessed debts and liabilities, present and contingent, to the corporation."

In other words, the Supreme Court here says that a litigant who has borrowed money from a so-called corporation, with full knowledge as to its status, is estopped to deny its corporate existence when sued for the debt.

In La. Nat. Bank vs. Henderson, 116 La. 411, 40 So. 779, the Supreme Court held:

"The fact that a creditor has contracted with a company holding itself out as a cor-

poration does not necessarily work an estoppel to deny its corporate existence."

To sustain this ruling the court cites various decisions, a careful reading of which shows that the plea of estoppel has been overruled only when the party pleading it has received fruits or benefits from the alleged company with actual or constructive knowledge of the true situation.

In Williams vs. Hewitt, 47 La. Ann. 1080, 17 So. 496, where plaintiff sought to hold defendants for an amount deposited in the Traders' Bank, under which name defendants had done business, and defendants claimed estoppel on the ground that plaintiff had recognized the corporate capacity of defendants by the deposit and various other dealings, the Supreme Court in an opinion overruling the plea of estoppel uses the following language:

"Their knowledge that the institution was not chartered came to them after the deposit. There is, in our view, no basis to infer any notice to plaintiffs of any kind on which an estoppel can be based, unless we are to hold that the externals usual to all private banks, of the name of a bank and presidents and cashiers, with the issue of certificates of deposit, estop plaintiffs from asserting the individual liability of those who receive deposits.

"The courts have not frequently applied the estoppel against denying the existence of the corporation. It will be found that in such cases the estoppel has rested on conduct of the corporation which made it inequitable for it to avail of the estoppel, and it strikes us if there is any room in this case for any estoppel, it would be that arising from defendants taking plaintiff's money on deposit as bankers with no license to do that business."

In Lehman & Co. v. Knapp, et als., 48 La. 1154, 20 So. 674, the court uses the following language:

"The plea of estoppel has never been applied to the creditor of a corporation seeking the payment of his claim. In one case the debtor has received a benefit that stops him; in the other the creditor has sued to recover an amount due by those who have failed to avail themselves of the terms of the status."

In the instant case defendants promptly questioned the existence of the National Oil Works and of the National Oil Works, Inc., and the evidence now shows that no such corporation either, de jure or de facto, existed at the time. Certainly defendant had then received no fruits or benefits from the so-called corporation, nor had he acknowledged their corporate capacity or acquiesced therein, because his copy of contract was not signed by plaintiff when he affixed his signature.

Suppose defendant had done the work and had filed suit for the contract price and the sheriff had reported that there was no such corporation as the National Oil Works, Inc., and no person authorized to receive service for any such entity, what could the defendant have done? We must consider the situation as of the time defendant declined to execute the contract and not in the light of the subsequently filed documents.

While we can find no decisions exactly covering the point at issue and neither attorney has referred us to any, we are of the opinion that the reasons underlying the decisions on analogous cases referred to above support defendant's contention that there was no contract between the parties and that this defense was raised in time.

For the above reasons the judgment is reversed and it is now ordered, that plaintiff's suit be dismissed.