No. 14,059.

SOUTHWESTERN TELEPHONE COMPANY VS. KANSAS CITY, SHREVEPORT AND GULF RAILWAY COMPANY.

SYLLABUS.

1. In an action brought by a foreign corporation to expropriate property in this State, under Act No. 124 of 1880, a denial, in general, and in specific, terms, of the right to the relief prayed for, is sufficient to put at issue

the capacity of the plaintiff to enter this State for the purpose of carrying on its business ; and, when it appears from its charter, offered by the plaintiff, that no such right exists, the action will be dismissed.

2.  Where a corporation is established under the law of another State for the purpose of constructing and maintaining telegraph and telephone lines in certain named counties in that State, such corporation is without authority to extend its operations beyond the limits of the counties designated, and does not come within the meaning of Act 124 of 1880, which is intended to apply to foreign corporations that are authorized, so far as they can be, by the States creating them, to carry on their business elsewhere.

A PPEAL from the First Judicial District, Parish of Caddo— Land, J.

*Holbert & Barret,* for Plaintiff, Appellee.

*Alexander & Wilkinson,* and *Lathrop, Morrow, Fox & Moore,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.   Plaintiff alleges that it is a corporation organized under the laws of the state of Texas; that it has complied with the law of Louisiana relative to foreign corporations, transacting business in this state, and is preparing to build a telegraph and telephone line from Beaumont, Texas, by way of Shreveport, Louisiana, to the state of Arkansas, with a branch line to Lake Charles, Louisiana; that the most direct route for said main and branch lines is along the defendant's railroad, from the Sabine river to Arkansas, and from De Quincy, Louisiana, to Lake Charles; and that, not being able to agree with the defendant as to the value of the same, it is necessary to expropriate a right of way for its poles, wires, etc.  And there is a prayer for a jury and for judgment, accordingly.   The defendant files a general denial and a special denial of the right of the plaintiff to expropriate as prayed, and alleges that the proposed construction would interfere with it in the operation of its railway, and that, if the expropriation is decreed, the plaintiff should be required to pay $30 a mile, as the value of the property, and $10 a mile, as damages, and should be required to establish its poles, wires, etc., in the manner and upon the side of the track least injurious to the owner of the same.

The case was tried upon the isues thus presented, and there was a verdict for the plaintiff "for right of way for 248 miles," for which the defendant was allowed $5.00 a mile, without further specification. Upon this verdict there was judgment entered, designating the points between which the right of way was granted, and entering into other, necessary, particulars. And, from this judgment the defendant has appealed. In a supplemental brief, filed in this court, it is suggested, by defendant's counsel, that the plaintiff's charter gives it the right to operate only in certain, named, counties in the state of Texas, and, hence, that it is without power to carry on business or to expropriate property elsewhere. To this, counsel for plaintiff reply, that the suggestion is in the nature of an objection to the capacity of the plaintiff to bring this suit, and that it comes too late. The question presented, however, goes beyond that, and rests upon the proposition, that, by the evidence offered in support of its demand, the plaintiff has shown that it is not entitled to the relief sought, since it thereby appears that it is without legal capacity to come, or to operate its lines, and, *a fortiori,* is not entitled to expropriate property, within the state of Louisiana, and the issues involved in this proposition are raised by the original pleadings. Thus; conceding that the plaintiff's corporate existence, and its compliance with the law of this state, relative to foreign corporations, should, in the absence of specific challenge, be presumed, it would, still, be necessary, in the face of even a general denial, or if the case were before the court for confirmation of default, to establish, by proof, that it is within the category of corporations, which, under the law creating them, and under the law of this state, are authorized to operate, and to exercise the power of eminent domain, here, since there are many corporations established under the law of Texas, and of other states and countries, which are lawfully created, and might comply with our law relative to foreign corporations, but which do not fall within that category. The mere failure of the plaintiff to make such proof, would, therefore, be a failure to make out its case, and affirmative proof of a contrary character would, of course, be equally fatal. Considering the question presented, then, upon its merits: It is axiomatic in the jurisprudence of this country that the comity, agreeably to which a corporation created by one state, or nation, is permitted to conduct its business within the territory of another, does not extend so far as to permit the exercise, by foreign corpora-

tion, of powers that are in contravention of the public policy of the state in which such business is conducted, or, that are in derogation of common right. And, as the power of eminent domain is of the latter class, it follows, that it can not be exercised by a foreign corporation as a matter of comity, but only by virtue of an express grant of authority from the state in which it is exercised. Recognizing this fact, the General Assembly, in 1880, passed an act (No. 124 of that session) which confers upon corporations "chartered or formed under the laws of this, or any other, state, or under the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph, or telephone," etc., the right to establish lines in this state, and, for that purpose, to expropriate property. It can readily be understood, however, that this statute can have no application to a case where, by the law creating it, a corporation, established by another state, or by the United States, is prohibited, whether in express terms or by implication, from operating in Louisiana. It is for the government creating a corporation to determine, primarily, and within the limits of its own authority, what powers shall be exercised by such corporation and where it shall exercise them. The authority of a state does not extend beyond its own boundaries, and, hence, no corporation, created by such state, can, by virtue of its authority, exist or transact business beyond those limits. If a state, in creating a corporation, imposes no territorial restriction upon its operations, the question, whether it can, lawfully, operate in other states, depends upon the comity existing between such states and the state of its creation, or, in the cases previously mentioned, upon specific legislation in the other states. If, upon the other hand, a state, in creating a corporation, imposes territorial restrictions upon it, those restrictions are not affected by the laws of other states, enacted for the benefit of foreign corporations not so restricted. It was, no doubt, competent for the state of Texas to have established a corporation with general authority to construct and maintain telegraph and telephone lines, without limitation or specification as to territory. And such a corporation could have claimed the privilege of operating in Louisiana because its creator had authorized it to operate wherever it might be allowed and because, being so authorized by its creator, it has the permission of the state of Louisiana. But, it was equally competent for the state of Texas to have established a corporation for the purpose of operating in one of its own

counties, wards, or municipalities, and to have conferred upon it authority to operate only within the territory designated; and the corporation so created could have operated nowhere else, for the reasons, that, existing only within the limits of the law creating it, it could have had no capacity to violate that law; and that, neither the comity nor the laws of other states upon the subject of foreign corporations could have been invoked in its behalf, since it would be inadmissible to suppose that the other states would undertake, either by comity or statute, to regulate a Texas corporation in a manner at variance with the law of its creation. The plaintiff's charter, offered in evidence on its behalf, provides, to quote the language, that:

" The purpose for which this company is formed is for the erection, maintenance and operation of telegraph and telephone lines in Jefferson, Hardin, Orange, Newton, Jasper, San Augustin, Sabine, Liberty, and Shelby counties, and for the purchase and sale of such goods, wares and merchandise as may be used for said business."

According to its own showing, therefore, plaintiff must confine its operations within the nine, named, out of, probably, 250 counties, in the state of Texas, and, according to the same rule of construction by which this conclusion is reached, it can operate nowhere else, since the enumeration of the counties, to operate within which it is created, excludes all other places as well as the remaining counties in Texas. And, to hold, that the Louisiana statute of 1880 has the effect of conferring upon the plaintiff authority to erect, maintain and operate telegraph and telephone lines in Louisiana would be to hold that the state of Louisiana has undertaken to remove a competent restriction placed by the state of Texas upon a corporation created solely by its authority. The main proposition; i. e., that it is a condition precedent to the right of a corporation created by one state to operate in another that it shall be so authorized, or, at least, that it shall not be prohibited, by the law of its creation, is elementary in this branch of jurisprudence, and lies at the foundation of the decision in Bank of Augusta vs. Earle, 13 Peters 588, in which Chief Justice Marshall said:

" The charter of the Bank of Augusta authorizes it, in general terms, to deal with bills of exchange, and, consequently, gives it the power to purchase foreign bills, as well as inland bills, in other words to purchase bills payable in another state. The power thus given clothed the corporation with the right to make contracts out of the state, in so far as Georgia could confer it.   *   *   *.   The purchase of the bill in ques-

tion was, therefore, the exercise of one of the powers which the bank possessed under its charter, and was sanctioned by the law of Georgia creating the corporation, so far as that state could authorize a corporation to exercise its powers beyond the limits of its jurisdiction. * * * The corporation must, no doubt, show that the law of its creation gave it authority to make such contracts," etc.

Forty years later, the same august tribunal, speaking through another Chief Justice, said:

"Every corporation, necessarily, carries its charter wherever it goes, for that is the law of its existence."

Relf vs. Rundle, 103 U. S. 222.

Upon the subject of the right of a corporation, created for the purpose of carrying on business within particular limits, to extend its operations, even by indirect methods, beyond the limits designated in its charter, this court has said:

"If a corporation, like the New Orleans Gas Light Company, formed to manufacture and sell gas *within certain limits of the City of New Orleans,* is permitted to acquire a controlling interest in the stock of another gas company, authorized to make and sell gas in *another part of the city,* and, by such controlling interest, to, practically, take possession and manage the affairs of such other corporation, it, in effect, is equivalent to engaging in a business other than that authorized by its charter, and this is in direct violation of the fundamental law." State *ex rel.* Jackson *et als.* vs. Newman *et als.,* 51 Ann. 838.

It need only be remarked, in addition, that the provisions of our fundamental law which are thus referred to make no exception in favor of foreign corporations, but declare that "No corporaton shall engage in any business other than that expressly authorized in its charter or incidental thereto." (Const. Art. 265). The fact that the plaintiff, corporation, was established for the purpose of carrying on business within certain specified counties in the state of Texas is irreconcilable with any theory of authorization, express or implied, to conduct such business in Louisiana, and the act of 1880 which is relied on as conferring that authority, for the reasons stated, has no application.

It is, therefore, ordered, adjudged and decreed that the verdict and judgment appealed from be annulled, avoided and reversed, and that the demand of the plaintiff be rejected at its cost in both courts.

Rehearing refused.