Statement.
MONROE, J.
This matter comes before the court upon appeal from a judgment amending and' homologating an account of a receiver and ordering the distribution of a fund in which the appellants, as creditors of the J. I. Campbell Company and of the Lake Charles Lumber Company, respectively, - are asserting, somewhat conflicting rights. The facts, as we find them, from the evidence in the record, are as follows, to wit:
The J. I. Campbell Company was incorporated, for the purposes of a timber business, in Harris county, Tex., in February, 1904, by J. I. Campbell, 1. L. Campbell, and X. W. McNeil. The charter provides that:
“The place of business * * * shall be at the city of Houston * * * but its saw mills, planing mills, and other factories may also be established in the counties of Montgomery, Tyler, Polk, and San Jacinto, in the state of Texas, and agencies for the disposal of its products may be established in the above counties, and in the following counties, in the state of Texas; Lampasas, Llano, Mason, McCulloch, Mills, San Saba, Bell, McLennan, Dallas, Limestone, Galveston, Dewitt, and Lavaca. * * * The business of the corporation shall be managed by a board consisting of five directors, and the names and residences of those who are appointed for the first year are as ' follows: J. I. Campbell, I. L. Campbell, X. W. McNeil, and A. F. Sharpe, Jr., all of Houston, and L. W. Campbell, of Dallas, Tex.”
We infer that J. I. Campbell was the capitalist of the enterprise, and that I. L. and. L. W. Campbell were his sons. Certain it is that the Campbells owned more than 95-per cent, of the stock of the company, and that, after the death of J. I. Campbell, which must have occurred soon after its organization, the affairs of the company were directed by I. L. Campbell and that Sharpe & McNeil, who seem to have been the only other-stockholders, were employed by the company;, the one as secretary, and the others as superintendent, or in some such position.
During the year 1904, I. L. Campbell concluded that it would be advisable to buy or lease a mill, and establish a branch, or agency, at Lake Charles, La., and he testifies that it was agreed between him and Sharpe that the latter should take-charge of it, and should, receive $250 a month (being the same salary that he was getting in Houston) and 40 percent. of the- profits of the business. It was further agreed that the business at Lake-Charles should be conducted under the name of the “Lake Charles Lumber Company”;, the purpose, as testified to by Campbell and Sharpe, being to keep the business separate-merely as a matter of bookkeeping. W. H. Norris, a lumber man of considerable experience, who is at present one of the receivers of the J. I. Campbell Company, in Texas, assigns another possible reason. Being asked whether it is usual for such corporations to do business at different places-under different names, he testifies that it is-a common practice in Oklahoma, Kansas, and. Texas, and, being asked, “Why is this done?” he testifies:
“Sometimes they do it for a blind, they do-not want people to know who owns the business ; and sometimes the farmers are prejudiced against corporations, and they just use-a local name, putting a local man in there as manager.”
Beyond this the evidence in this record1 shows conclusively that by such an arrangement; i. e., the establishment under.different *405 names of what were held out to be different business concerns, independent of each other, the parties concerned were enabled to obtain a credit to which they are not entitled. Thus, the Lake Charles National Bank, having already discounted more or less paper for it, refused to discount a particular offering made by the Lake Charles Lumber Company, whereupon Sharpe, the manager, informed the bank that the company was perfectly solvent, and furnished what purported to be a statement of its assets and liabilities, showing a balance of assets amounting to $6,480.89, and, among its liabilities, an indebtedness to the J. I. Campbell Company amounting to $12,293.48. The cashier of the bank testifies:
“It was my understanding that the Lake Charles Company was a separate business from the J. I. Campbell Company.”
Being asked from whom he obtained the information which led him to that understanding, he answers:
“I was talking to Mr. Sharpe last fall with regard to selling the company some timber lands in which I am interested. I got the understanding from him that the Lake Charles Company belonged to or was run by himself and Mr. Campbell.”
And similar representations were made by Campbell to the First National Bank of Houston, Tex., 'which institution, having already loaned to the J. I. Campbell Company a large amount of money on mortgage security, was requested to discount for said company certain acceptances of the Lake Charles Company, which request was granted upon the faith of a statement, furnished by I. L. Campbell, purporting to be a statement of the affairs of the Lake Charles Company, showing a balance of assets amounting to $8,359.34, and also showing that said company was a separate concern from and was indebted to the J. I. Campbell Company in the sum of $27,737.13. Testifying concerning these transactions, the cashier of the First National Bank says:
“My information was that it [the Lake Charles Company] was a separate concern.”
Being asked whether at the time that the Lake Charles Company paper was discounted, the bank believed that company to be a separate concern, he answers, “That was our belief.” Being asked whether the bank relied on that belief in accepting the paper and discounting it, he answers:
“We would not have accepted them [the acceptances] if we had known they were the same concern, because the amount [referring to the amount which the bank had already loaned to the J. I. Campbell Company] was already excessive.”
There were, possibly, some persons who-were informed of the true condition of affairs, but they were few and far between, and they are not among those who are now before the court claiming as creditors. Upon the other hand, as, in addition to the particular representations made to the two-banks, as stated, the Lake Charles Company set itself up in business, bought and sold,, employed labor, issued commercial paper, borrowed money, kept bank accounts, etc., in that name; it was commonly accepted as an independent concern, the relations of which to the J. I. Campbell Company were unknown, and not inquired into, and we entertain no doubt that it was the purpose-of those by whom it was started upon its-business career that it should be so accepted. On February 14, 1905, the J. I. Campbell Company was placed in the hands of a receiver, by the district court of Harris county, Tex., and on the following morning Sharpe caused an entry to be made on the books of the Lake Charles Company as of date January 23d, crediting himself, and the J. I. Campbell Company, with 49 per cent, and 51 per cent, respectively with certain fictitious profits — his statement as a witness being, that the profits of the Lake Charles business were to be divided in that proportion, and not in the proportion of 40 per cent, and 60 per cent., as stated by I. L. Campbell. *407 On February 17, following, I. L. & S. M. Campbell filed a petition in tbe district court for tbe parish of Calcasieu, alleging that they own more than 95 per cent, of the stock of the J. I. Campbell Company, that said company had been incorporated under the laws of and had been engaged in business in Texas; and that it had also been engaged in business in Calcasieu, under the name and style of the “Lake Charles Lumber Company”; that it had been placed in the hands of a receiver in Texas; and that, being largely indebted to citizens of Calcasieu, it was necessary that a receiver be appointed “to take immediate possession of all property and assets of said corporation and said Lake Charles Lumber Company situated in the parish of Calcasieu.” To this petition the J. I. Campbell Company, through I. L Campbell, its president, and the Lake Charles Lumber ■Company, through A. F. Sharpe, manager, answered, admitting all that is alleged, and the court thereupon appointed S. C. Tevis “receiver of the J. I. Campbell Company and the Lake Charles Lumber Company,” and, thereafter the receiver, having reduced the assets which had come into his hands to cash, filed an account showing cash on hand, $19,989.02, and proposing to distribute the same among privileged creditors, holding claims to be paid in full amounting to" $9,-904.13, and ordinary creditors, holding claims to be paid pro rata amounting to $15,574.83. In the meanwhile, i. e., between the date of the appointment of the receiver and that of the filing of the account, certain persons and corporations had filed interventions which were converted into or regarded as oppositions, on the filing of the account, to which were added the oppositions of other persons and corporations, and, after trial upon the issues thus presented, there was judgment decreeing that the account be amended in certain particulars, as the result of which the privileged debts, not including the costs of court, are recognized as amounting to $8,651.30,' and the supposed balance of the fund on hand is ordered to be distributed pro rata among certain ordinary creditors holding claims for recognized amounts — the judgment concluding as follows, to wit:
“It is further ordered that the pro rata share coming to each of the above-named ordinary creditors out of the aforesaid sum of $11,287.72 ordered pro rated among them, be paid to each one of said creditors excepting the following Alex Gilmer, Continental Lumber Company, Lutcher & Moore Lumber Company, and Long Bell Lumber Company, and it is ordered that Samuel C. Tevis, receiver, retain in his hands the pro rata of said sum allotted to the debts of each of said last-named creditors until final judgment on distribution of assets or proceeds of assets in suit No. 35,694, in the district court of Harris county, Tex. Fifty-fifth judicial district, entitled "I. L. Campbell et al. vs. J. I. Campbell Company et al.’ It is further ordered that if creditors residing in the state of Louisiana are permitted to share with all other creditors according to rank, without discrimination as to residence or domicile of said Louisiana creditors who file their claims in accordance with law in said proceeding, then, the pro rata share allotted to the debts of Alex Gilmer, Continental Lumber Company, Lutcher & Moore Lumber Company, and Long Bell Lumber Company, shall' be paid to each of said creditors; otherwise, the pro rata share allotted herein to each of said four named creditors shall be distributed pro rata among the other ordinary creditors recognized in this judgment. It is further ordered, adjudged, and decreed that the opposition of the first National Bank of Houston, Tex., be rejected and dismissed at its cost, and that the opposition of the II. W. Miller Grocery Company, to be carried as a privileged creditor, be rejected and dismissed at its costs.”
The aggregate amount of the debts due the ordinary creditors thus recognized is $40,-861.16. The claims of Alex Gilmer, Continental Lumber Company, Long Bell Lumber Company, and Lutcher & Moore Lumber Company amount to $24,025.29. The claim of the First Rational Bank of Houston (which is rejected) is for $6,000. The opponents thus named have appealed, as have also the Calcasieu National Bank, .the Lake Charles National Bank, and Kelley, Weber & Company, Limited, whose claims are recognized by the judgment.
The claims of Alex Gilmer, Continental Lumber Company, Long Bell Lumber Com *409 pany, and Lutcher & Moore Lumber Company arise out of business, between J. I. Campbell Company and those opponents, transacted elsewhere than in Louisiana, and with which the Lake Charles Lumber Company had no connection. The claim of the First National Bank of Houston arises out of the discount, at Houston, Texas, for J. I. Campbell Company, of commercial paper issued by the Lake Charles Lumber Company. The claims of the other appellants arise out of transactions between those opponents and the Lake Charles Lumber Company (whether directly or indirectly) at Lake Charles, La. The fund to be distributed consists, exclusively, of the proceeds of assets acquired, and standing in the name of the “Lake Charles Lumber Company.”
Opinion.
Under the law of its creation, the J. I. Campbell Company was confined, as to its principal place of business, to Houston, Tex., as to its saw mills, planing mill, and other factories, to the counties of Montgomery, Tyler, Polk, and San Jacinto, and as to its agencies for the disposal of its products, to the counties mentioned, and to those of Lampasas, Llano, Mason, McCulloch, Mills, San Saba, Bell, McLennan, Dallas, Limestone, Galveston, Dewitt, and Lavaca, all in the state of Texas. Telephone Co. v. Railway Co., 108 La. 691, 32 South. 958. Under the Constitution and statute law .of Louisiana (even though it were so authorized by the law of its creation), the corporation was prohibited from engaging in business in this state save upon compliance with certain conditions, which were not complied with. Const, arts. 264, 273; Acts No. 149, p. 188, of 1890.
Under the law of its creation, as also under the law of Louisiana, the company was without legal capacity to engage in business anywhere under any other name than that by which is was established; the name of a corporation being as essential to its existence as any -other franchise conferred upon it.
It follows from these premises that if all the officers and stockholders of the company in question had agreed to establish for it, under its proper name, places of business, mills, or agencies, in territory other than that specified in the charter, or had agreed to establish for it, under some other name, a place of business, mill, and agency (all in one) in territory so specified, or in any other, and particularly, in territory the law of which prohibits such establishment, the agreement would have been impossible of legal execution, and the result of the attempt to execute it would have been, the establishment of a business concern, or legal entity, the obligations of which, and of the members of which, to third persons dealing with it, would have been those of commercial partners. Cincinnati Cooperage Co v. Bate et al. (Ky.) 26 S. W. 538, 49 Am. St. Rep. 300, and authorities there cited; Baldey & Lightner v. Brackenridge, 39 La. Ann. 662, 2 South. 410; Williams v. Hewitt, 47 La. Ann. 1076, 17 South. 496, 49 Am. St. Rep. 394; Lehman v. Knapp et al., 48 La. Ann. 1148, 20 South. 674. And the proposition so stated is equally true whether the agreement mentioned should have included all or only a portion of the officers and stockholders of the corporation. In the instant case, therefore, when J. I. Campbell, officer and stockholder of the J. I. Campbell Company, proposed to A. P. Sharpe, officer (or employé) and stockholder of the same company, the establishment of a business enterprise at Lake Charles, La., to be conducted as the business of the J. I. Campbell Company, but under the name of the Lake Charles Lumber Company, and the proposition was accepted and acted on, the effect was the creation of an unincorporated juridical entity, composed of all the stockholders and officers of the J. I. Campbell Company who participated in or ratified the agreement; and, whether A. F. 'Sharpe is to be regarded as also occupying *411 the position of an employe, whose compensation was to be measured in part by the profits of the business, is immaterial, since the litigants before the court are not so much interested in the personnel of the firm as in the facts that it existed, and that 'it acquired property and contracted debts. Eor present purposes, the things that are important are that the Lake Charles Lumber Company was established in a commercial business; that it acquired property, and contracted debts; and that its creditors are demanding to be paid from the proceeds of the property so acquired, by preference over certain creditors of the J. I. Campbell Company, who assert that the Lake Charles Company and the J. I. Campbell Company are one and the same. For the reasons which have been stated, however, that assertion is not and cannot be made good. The proposition that a corporation, which, by the law of its creation, has a particular name, and, as to its existence and business, is confined to certain counties in a particular state, can masquerade under another name, in foreign territory,‘and still preserve its identity and existence as a corporation, is untenable. Beyond this, it does not much matter for the purposes of the present case, what may be the legal relations existing between the two concerns. If the J. I. Campbell Company were held to be a partner in the Lake Charles Lumber Company (a difficult, if not impossible,’supposition), the creditors of the partnership must be paid from the partnership assets before anything can inure to the partners from which their individual creditors can be paid.' If the J. L Campbell Company advanced to the individuals who established the Lake Charles .Company, the funds with which that concern started into business, it is the creditor of those individuals, and not of the company. If the J. I. Campbell Company advanced money to the Lake Charles Company after the company last mentioned was formed, it is the creditor of that company; but, it is not here asserting such rights. If it could be regarded as having created and endowed the Lake Charles Company merely that the latter might act as its agent, it, nevertheless, brought into existence an independent juridical personage, capable of acquiring property and of contracting debts, and whose property must go, by preference to the payment of the debts so contracted. What may be the rights of the creditors of the Lake Charles Company, quoad any balance that may be due them after the property of the company has been exhausted, as against the J. I. Campbell Company (regarding the latter as an undisclosed principal), is a question that need not be here considered.
Our conclusion, then, is that the money offered for distribution, being the proceeds of property acquired and held by and in the name of the Lake Charles Lumber Company, a commercial partnership, should be devoted (after paying the costs of this receivership) to the payment of the debts contracted by and in the name of said partnership, and that the creditors of the J. I. Campbell Company are not entitled to participate in such distribution; from' which it follows, that the demands for 'recognition as creditors of Alex Gilmer, the Continental Lumber Company, the Lutcher & Moore Lumber Company, and the Long Bell Lumber Company should be rejected, and that the similar demand of the First National Bank of Houston should be recognized and allowed. This bank, however, holds in pledge to secure • the amount here claimed (together with a much-larger amount due by the J. I. -Campbell Company, the pledgor), collaterals for a large amount, and we are of opinion that it ought to be required to exhaust that special resource before being allowed to deplete the fund in court, which is the common, resource of all the creditors.
Proceeding upon this idea, the judge a quo *413 rejected the demand of the bank, entirely, but we are not satisfied that the collateral held by it will pay its debt in full, and if there should be a balance remaining due, after the discussion of the security, the bank ■ought to be allowed to participate in the distribution of the common fund, since it •did not cut itself off therefrom by taking security which its co-creditors failed to take. The learned counsel for the receiver argues that because the bankruptcy act (July 1, 1898, e. 541, § 57, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), requires the secured ■creditor to surrender his security or stay •out of the concursus, the same rule should be applied here. We think not; for the reasons (1) that the security was not given to the bank by the Lake Charles Company, but by the J. I. Campbell Company; and (2) that such is not the rule of oúr law under which the creditor is entitled to hold his security until his debt is paid, subject to the right of the creditors or the syndic of the common debtor to force a sale thereof (provided the property bring enough to satisfy the debt for which it is pledged), and thereby secure the surplus. Renshaw v. Creditors, 40 La. Ann. 37, 3 South. 403; Receiver v. Syndics, 52 La. Ann. 1613, 28 South. 158. In the instant case, the pledged property consists of notes secured by mortgage on real estate in Texas, which real ■estate is the property of certain corporations; the stock in which is owned by the J. I. Campbell Company, or its members. The creditors of the Lake Charles Company can, therefore, hardly force the sale; but we imagine that the bank may be able to do so, and we are of opinion that a reasonable time ought to be allowed for that purpose.
For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended in so far as that it is now held, for all the purposes of the issues involved in the present appeal; that the fund offered for distribution is to be regarded as belonging exclusively to a commercial partnership known as- the “Lake Charles Lumber Company,” and, after paying the costs of this receivership, as being liable for the debts contracted by and on behalf of that concern; that said judgment be further reversed and amended in that the demands of Alex Gilmer, the Continental Lumber Company, the Lutcher & Moore Lumber Company, and the Long Bell Lumber Company, are now rejected, and the amounts allowed those interveners are now stricken from the account; that said judgment -be further amended in that the First National Bank of Houston, Tex., is now recognized as an ordinary creditor of the Lake Charles Lumber company in the sum of $6,000, and the receiver is ordered to place it on his account for that amount, subject, however, to the following conditions, to wit: That the pro rata amount which may be attributed to the debt in question be retained by the receiver for such time as may, in the opinion of the trial judge afford the bank reasonable opportunity to realize upon the collateral held by it as security for sáid debt and for debts due by the J. I. Campbell Company; it being the purpose and meaning of this decree that the bank shall discuss said collateral and appropriate the same to the payment of its debt before being allowed to participate in the distribution of the common fund now in the hands of the receiver, and that it shall then so participate only for such balance as may be due.
It is further adjudged, and decreed, should the application of said, collateral to the payment of its debt be delayed, through the fault or inaction of said bank, beyond such reasonable limits, then, that the pro rata of the fund in the hands of the receiver attributable to said debt, be distribut *415 ed among the other creditors of the Lake Charles Lumber Company.
It is further adjudged, and decreed that the judgment appealed from be further amended, in that it is now ordered that, after paying the claims recognized by said judgment as privileged, and after paying the costs of this receivership, the receiver distribute the balance in his hands (whatever that balance may be) among the ordinary creditors, in the manner directed by said judgment as hereby amended.
It is further adjudged and decreed that the costs of this appeal be borne by the mass.
On Rehearing.
In this case, it is ordered that the judgment heretofore rendered be now set aside, and that a rehearing be granted upon the 'questions: (1) Whether the Perkins-Miller Lumber Company, Limited, should be recognized as a creditor of the Lake Charles Lumber Company; and (2) whether any conditions, other than such as are imposed with respect to the payment of the claims of the ordinary creditors, in general, of the Lake Charles Lumber Company; should be imposed with respect to the payment of the claim of the First National Bank of Houston, Tex., and, if so, what conditions should be so imposed.