(76 South. 800)

No. 22429.

MYER v. KENDALL et al. (FIRST SAV. BANK & TRUST CO., Intervener).

(Oct. 29, 1917. Rehearing Denied Nov. 26, 1917.)

*(Syllabus by the Court.)*

1. PRINCIPAL AND SURETY ⟨⟩168—SURETY-SHIP—PLEA OF DISCUSSION.

The exception of discussion cannot be opposed to the privileged creditor, or to one who has a special hypothecation. And a plea of discussion cannot be invoked in such case.

2. MARSHALING ASSETS AND SECURITIES ⟨⟩5 —APPLICATION OF RULE.

The rule of marshaling assets does not prevail except where both funds are in the hands of the common debtor of both creditors. Hence the rule can have no application to a case where one fund belongs to the common debtor and the other fund or property belongs to a third party.

O'Niell, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Executory process by J. S. Myer against Mrs. Lucille B. Kendall and others, with judicial sale and adjudication to plaintiff, in which the First Savings Bank & Trust Company filed intervention and third opposition against Myer as defendant. Judgment for intervener, and Myer appeals. Affirmed.

B. H. Lichtenstein and Joseph H. Levy, both of Shreveport, for appellant. Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

SOMMERVILLE, J. On February 27, 1912, Mrs. Mary O. Gunning sold to Mrs. Lucille B. Kendall, the defendant, lot 10 and east one-half of lot 9 of the Homesville subdivision of the city of Shreveport, with all the buildings and improvements thereon, for the price of $6,500, of which $900 was paid in cash, and for the balance the said Mrs. Kendall executed her two promissory notes payable to the order of the said Mrs. Gunning, one for $4,000, due at two years from date, and the other for the sum of $1,600, due at three years from date. Both notes bore interest at the rate of 8 per cent. per annum from date, payable annually; and they were secured by vendor's privilege and special mortgage on the property conveyed as per authentic act in the usual form. These two notes are involved in this case.

Mrs. Gunning indorsed and transferred the note for $4,000 to the plaintiff, Myer, before maturity, by authentic act. She indorsed and transferred the note of $1,600, to intervener, the First Savings Bank & Trust Company of Shreveport, before maturity, in pledge and as security for a mortgage note of $1,350 given by her to intervener.

The two notes fell due, but Mrs. Gunning was not notified, and they were not protested. She is not liable as indorser on the notes; and plaintiff and intervener do not attempt to hold her liable thereon. She is not their common debtor, or a debtor of Myer at all. Myer and the bank look to the mortgaged property to be reimbursed, or to share ratably in the proceeds of the sale of the property. Mrs. Kendall is the common debtor of plaintiff and intervener.

In March, 1915, J. S. Myer, as holder of the $4,000 note, sued out executory process to foreclose the privilege and mortgage on said property, directing the sale of the same for cash to pay said note, and on terms of credit to pay the note for $1,600, which had not at that time matured. The latter note has since matured.

The property was sold at judicial sale on June 5, 1915, and was adjudicated to said J. S. Myer, plaintiff, for $5,200, which amount he paid into the hands of the sheriff.

In July, 1915, the First Savings Bank & Trust Company filed an intervention and third opposition in the executory proceedings, as the bona fide holder and pledgee of the note for $1,600, and prayed for judgment for its pro rata share of the proceeds of the foreclosure sale.

In response to a prayer for oyer on the part of Myer, the bank produced the note for $1,600, and a note of Mrs. Gunning for $1,350, for which the first named note was pledged.

The note for $1,350 bore the following notations:

"Attached as collateral security mortgage note Mrs. Mary J. Gunning for $1,500, date May 18, 1915, due one year, with 8 per cent. interest from date. Mortgage note Lucille B. Kendall for $1,600, dated February 27, 1912, due February 27, 1915, with 8 per cent. interest from February 27, 1914."

It would thus appear that the bank held two notes, one for $1,500, and the other for $1,600, the notes hereinbefore referred to, as security for the note of Mrs. Gunning for $1,350.

The answer of Myer to the bank contains, inter alia, the following averments:

"That accordingly said plaintiffs have two items of collateral security to secure said alleged indebtedness of $1,350, and their demand to compel said J. S. Myer to prorate the proceeds of the sale of property wherein he will thereby receive less than his mortgage claim is premature, until said First Savings Bank & Trust Company has exhausted its rights and remedies against the collateral security of $1,500 which it alleges it holds."

"Wherefore defendant prays that this exception of prematurity be maintained, and the demand of the First Savings Bank & Trust Company be rejected at its costs, and for all general relief."

Defendant next filed an exception and plea of discussion, stating the facts more fully, and, among others, that the mortgage note of Mrs. Gunning for $1,500 is sufficient collateral security to pay said note for $1,350 due by Mrs. Gunning.

The said answer prays that the bank "be ordered to obtain and derive its payment out of the note of $1,500 of Mary J. Gunning," and that its application to prorate be rejected.

The exceptions of prematurity and discussion were overruled by the court.

Myer then filed a petition for the "marshaling of assets," and prayed that Mrs. Gunning and husband be made parties to the proceeding, and for judgment, as before, and ordering the bank to return said note for $1,600 to the said Mrs. Gunning.

Mrs. Gunning and her husband do not appear to have been cited; no default was taken or confirmed against her; she has not appeared in the cause; she is not before the court; and judgment cannot be rendered which might affect her interest in any way.

This last plea was also overruled; and thereupon Myer filed his answer to the petition of intervention and third opposition of the bank, and prayed for the same relief.

The case was tried, and judgment was rendered in favor of intervener as prayed for, ordering a pro rata division of the net proceeds of the judicial sale in question.

J. S. Myer, defendant in intervention, has appealed.

The judgments on the exceptions and pleas were rendered by Judge Webb, and the judgment on the merits was rendered by Judge Bell, both of the district court.

Judge Bell based his decree on the doctrine announced by Judge Webb as follows:

"It is true that the courts of this state have applied the doctrine of marshaling of assets in several instances, but we do not understand that such a doctrine has ever been applied when counter to the provisions of the Code of Practice declaring, 'Discussion cannot be opposed to the privileged creditor, or to one who has a special hypothecation' [article 73]; or the Civil Code, declaring that 'the plea of discussion cannot be opposed to the creditors, who have either a privilege or a special mortgage on the property found in the possession of a third person' [article 3404]."

Judge Webb proceeded to review and differentiate the cases cited as contra by counsel for appellant.

[1] Under articles 70 to 73 of the Code of Practice, third possessors not personally bound to pay the debt may plead discussion, but the exception of discussion "cannot be opposed to the privileged creditor, or to one who has a special hypothecation."

Under Civil Code, art. 3045 et seq., discus-

sion is a remedy in favor of sureties, who have not renounced the plea or who are not bound in solido with the debtor. The benefit of discussion was formerly denied to the judicial surety, but more recent legislation has granted the privilege to "any surety on any appeal bond, or on the bond of any administrator, tutor, curator, executor, or syndic." C. C. art. 3066.

Hence the exception or plea of discussion, limited and restricted as it is by codal provisions, has no application to this case.

[2] The marshaling of assets is another and different question governed entirely by principles of equity.

In the case of Campbell v. J. L. Campbell Co., 117 La. 402, 41 South. 696, the doctrine on the subject is thus stated in the syllabus:

"A creditor holding collateral security for his debt is required to exhaust such security before being allowed to participate in the distribution of a common fund which is insufficient to pay in full the debts of the common debtor, and a reasonable time may be allowed him for the discussion of such security, during which the distribution of so much of the common fund as is tentatively attributed to the payment of his debt may be suspended."

There was no dissent from this doctrine, and the decree was amended on rehearing because it appeared that the collateral was not received from the common debtor, but from a third person for his own debt. 117 La. 416, 417, 41 South. 696.

The doctrine announced supra is not disputed by counsel for the bank, but they contend that it is not applicable to the facts of the case.

They stress the fact that the common debtor is Mrs. Kendall, the proceeds of the sale of her property are the common fund, and that the additional mortgage note held by the bank as security was obtained from Mrs. Gunning on her own property.

Counsel cite 26 Cyc. 932, reading as follows:

"The rule of marshaling does not prevail except where both funds are in the hands of the common debtor of both creditors. In some jurisdictions, however, the rule is subject to the exception that, where independent equities exist from which there arises a duty on the part of one to pay in exoneration of another, the court will enforce that duty by subjecting the fund of the principal debtor."

In Willey v. St. Charles Hotel Co. et al., 52 La. Ann. 1592, 28 South. 182, this rule was adopted and enforced.

In Campbell v. Campbell, supra, the opinion on rehearing was evidently based on the fact that the collateral was received by the bank from another person in the usual course to secure the latter's indebtedness.

We know of no rule of equity which requires the bank to share the fruits of its vigilance with the plaintiff.

To compel the bank, which is the holder of a concurrent mortgage note with plaintiff, now past due, to exhaust its other securities against its debtor, before it can exercise its rights against the proceeds of the sale of the property upon which its mortgage bears, would be to violate the law and the bank's rights. This cannot be done in the name of equity.

The bank holds under a special mortgage together with plaintiff.

"The exception of discussion cannot be opposed to the privileged creditor, or to one who has a special hypothecation." C. P. art. 73; C. C. art. 3404.

The mortgage is a real right on the property bound for the discharge of the obligation.

"It is in its nature indivisible and prevails over all the immovables subjected to it, and over each and every portion. It follows them into whatever hands they pass." C. C. art. 3282.

So the property mortgaged must be sold for all the installments. The mortgagee, the bank, may select what property it pleases subject to its mortgage, although it occasion some inconvenience. Trop. d'Hyp. 750, 752.

In a similar suit before the court, Bagley v. Tate, 10 Rob. 45, we say:

"The position that, as there was other property subject to the same debt which had been

surrendered by the mortgagor, no recourse could be had against the plaintiff until that was exhausted, or accounted for, is quite untenable. The plea of discussion cannot be opposed to a creditor holding a special mortgage; nor could it be contended that the property held by the plaintiff was liable only for its pro rata proportion of the debt. Each and every portion of the property mortgaged is liable for each and every portion of the debt. The mortgage is tota in toto, et tota in qualibet parte. Code of Practice, art. 73. Civ. Code, art. 3367."

And again in Ricard v. Harrison, 19 La. Ann. 181, the case is stated, and it was held, as follows:

"Wm. G. Harrison, as owner and holder of several promissory notes made by P. C. Ricard to the order of and indorsed by the plaintiff, his mother, and secured by special mortgage on her plantation, instituted executory proceedings against said property, which plaintiff enjoined in this action. Said notes were given in part payment of a large property purchased by said P. C. Ricard, and in the act of sale the plaintiff intervened, and, in order to give additional security for the payment of said notes, specially mortgaged and hypothecated, 'in favor of Wm. G. Harrison, in his capacity of testamentary executor of the succession of S. T. Harrison, who accepts the said mortgage, or in favor of any holder or holders of the said promissory notes,' the landed property fully described in said act and belonging to plaintiff. The injunction is based upon various matters, which will be considered in the order adopted in the brief of counsel. * * *

"2. The plea of discussion and the deposit of the money to defray the costs of discussion.

"This plea, like the preceding, is erroneously based on the assumption that plaintiff is a third possessor. But if she were such, the plea would not avail her, as the exception of discussion cannot be opposed to creditors who have a privilege or special mortgage on the property found within the possession of a third person. C. C. art. 3367. C. P. art. 73."

Again, in the course of the opinion in the Succession of Anger, 36 La. Ann. 252, 255, it was said:

"The opponent asks that we should order the proceeds of 'Hermitage' to be held by the executor and distribution deferred until all the property be sold, and the creditors shall be ranked and classed according to their legal rights. The difficulty in the way of this lies in the absence of right to restrain the first mortgage creditor in his absolute right to receive the proceeds of sale of the mortgaged property. He has no concern with the order of sale. His mortgage is tota in toto, tota in qualibet parte. Bagley v. Tate, 10 Rob. 45."

In Powell v. Hayes, 31 La. Ann. 789, 792, it is said:

"It is very clear that the right of requiring previous discussion of other property subject to the same mortgage, but subsequently sold, does not exist as against a special mortgage. C. P. 73, 715."

Judgment affirmed.

O'NIELL, J., dissents.