Plaintiff, a corporation domiciled in the Parish of Orleans, brought this suit in the First City Court of New Orleans, alleging that it had sold and delivered certain merchandise to a commercial partnership composed of R. E. Reynolds and George E. Marshall; that it had not been paid therefor; that the partnership has its place of business in New Orleans; that Reynolds is domiciled in New Orleans, in the Parish of Orleans, and that Marshall is domiciled in Thibodaux, which is in the Parish of Lafourche. Plaintiff prays for solidary judgment against the partners and the members thereof for the alleged sale price of the goods, to wit $132.35, together with interest at eight per cent from November 24, 1946, and twenty per cent attorney's fees and costs, the latter items alleged to be in accordance with a stipulation contained in the delivery tickets which plaintiff avers were signed on behalf of the defendant partnership when the merchandise was delivered.
Reynolds made no serious defense, but Marshall filed a plea to the jurisdiction of the court, ratione personae and an answer, in which he alleged that no such partnership between himself and Reynolds had ever existed, and that the merchandise for the price of which this suit is brought, was, in fact, sold and delivered to the Reynolds Concrete Products Company of which Reynolds "was and is the sole owner and proprietor."
The plea to the jurisdiction was overruled and there was solidary judgment against the partnership, Reynolds and Marshall, and Robert E. Reynolds and George E. Marshall as prayed for. The matter is now before us on devolutive and suspensive appeal of Marshall.
There seems to be no controversy over the price of the goods, nor over the delivery thereof, and Marshall relies entirely on his plea to the jurisdiction ratione personae. He contends that there was no partnership between himself and Reynolds, and says that since there was no partnership and since it is correctly alleged in the petition that he is domiciled in Thibodaux, which is in the Parish of Lafourche, it necessarily follows that he may not be sued in the Parish of Orleans, since Article 162 of our Code of Practice provides that: "It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicil or residence, * * *."
His counsel contends that, although among the exceptions to this rule, there is found in Article 165 of the Code of Practice the exception to the effect that: "In matters relative to the partnership, as long as the partnership continues, in all suits concerning it the parties must be cited to appear before the tribunal of the place where it is established, * * *" that exception does not save the situation for plaintiff since there has never been any such partnership.
The following facts are disclosed. For some time prior to September, 1946, Reynolds, under the name "Reynolds Concrete Products Company", owned and operated an unincorporated concrete products business in New Orleans. Together with certain other persons, he owned a United States patent under which he manufactured a certain type of portable steps. He required financial assistance and in some way Marshall and he were brought together. At that time he was delinquent in his rent payments, and he owed other bills, and he and Marshall entered into an agreement — apparently verbal — under which Marshall was to advance certain funds for the payment of these obligations and under which also a corporation was to be organized for the conduct of the business. The incorporation was never completed — in fact, it seems certain that nothing whatever was done along that line. However, shortly after the initial agreement was entered into, and after Marshall had advanced considerable money, which was used in retiring some of the aforementioned obligations of Reynolds, Marshall became dissatisfied with the way in which Reynolds was operating the business, and he, Marshall, came to New Orleans and, in effect, took over the operation of the business. A short time later he introduced into the business a Mr. Falgoust, who became the general manager. *Page 171 
Though, from the record, it is impossible to determine just when the original agreement was entered into, or just when Marshall took charge, or just when he employed Falgoust, it seems certain that during September and October and during a part of November, 1946, the business was being operated as we have above outlined. Marshall was in charge, with Falgoust as manager, and Reynolds was advanced by Marshall $60 per week.
The merchandise, on the sale of which this suit is based, was delivered in two installments — one on October 11, 1946, and one on October 24, 1946, and the last of these deliveries was receipted for by Falgoust, who, as we have said, was placed in charge of the business by the defendant, Marshall.
During that time other creditors of Reynolds were paid by Marshall, and, on a truck used in the operation of the business, there was painted the name of the partnership. The witnesses are not certain whether it was Reynolds and Marshall, or Marshall and Reynolds.
It is evident from these facts that the merchandise was delivered while the business was conducted as we have outlined. Marshall does not deny this — in fact, he testified that the business was handled in this manner, but he maintains that, as a matter of law, there was never any partnership because there was never any agreement between himself and Reynolds that they would form a partnership. He has overlooked entirely the well established principle of law that where several persons agree to form a corporation and, pending incorporation, conduct a business for which the corporation is to be organized, during that period they are partners.
In Lind v. Senton, 10 La. App. 633, 120 So. 535, 536, we discussed this question. There three persons took the initial steps towards incorporation which was never consummated. They, "to some extent carried on the business which they had intended should be done by the corporation, which died 'a-borning' ". We said: "In doing so they made themselves liable as partners."
We cited Provident Bank Trust Co. v. Saxon, 116 La. 408, 40 So. 778; Louisiana National Bank v. Henderson, 116 La. 413, 40 So. 779; Campbell v. J. I. Campbell Co., 117 La. 402, 41 So. 696; Burdick on "Partnership," p. 45.
Therefore, we repeat that we have no doubt that during that period Marshall and Reynolds conducted a partnership.
Nor have we any doubt that that partnership was a commercial one. The business which they conducted was the manufacture and sale of concrete products. And we find from Article 2825 of our Civil Code that:
"Commercial partnerships are such as are formed:
"1. For the purchase of any personal property and the sale thereof, either in the same state or changed by manufacture. * * *"
It is impossible to determine from the record just how long the business continued to be operated in the manner in which we have described, but as we have said, it is certain that it was being so operated when these purchases were made. It does seem clear from the record that the business is no longer being conducted by the partnership, and it is also clear that there has been no formal dissolution.
Since the business is no longer being carried on by the partnership and was not being so conducted when this suit was filed, we are faced with the necessity of determining just what is meant by the phrase which is found in Article 165 of the Code of Practice that the partners must be sued at the place where the partnership is established "as long as the partnership continues."
Certainly so long as there is a commercial partnership, this solidary liability of the partners may be established only in a suit against the partnership and the members. In Rheuark v. Terminal Mud Chemical Co., 213 La. 732, 35 So.2d 592, 594, the Supreme Court said: "Commercial partners are bound in solido for the debts of the partnership in the sense that they and each of them may ultimately be required to pay the whole of its debts; yet such solidary *Page 172 
obligation is not a primary one, and, until the debt is established contradictorily with the partnership, so long as it exists, there is no debt within the meaning of Article 2872 of the Civil Code which can be enforced against the individual partners, and the partnership is a necessary party to the liquidation of such a claim. In other words, that liability does not become enforceable against the individual members who compose the commercial partnership separately and apart from the firm until it has been dissolved; so long as it continues, they must be sued through and with it. See E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898, and authorities therein cited."
In Goldman v. General Supply Co., La. App., 6 So.2d 778, we held that the partners might be sued, even though they no longer continued to operate the partnership, since there had been no formal dissolution of the partnership and since no notice of any dissolution had been given to the plaintiff-creditor. That view still impresses us as sound, and we think that where a commercial partnership, in the conduct of its business, makes purchases and fails to pay for them, a suit based on these purchases may be brought against the partnership and the individual members at the domicile of the corporation, so long as there has been no formal dissolution of the partnership.
It follows that the First City Court of New Orleans was possessed of jurisdiction ratione personae.
There is no dispute over the delivery of the goods nor over the price charged. However, the interest allowed should have been limited to the legal rate and should have been allowed only from judicial demand, and no allowance should have been made for attorney's fees.
On behalf of plaintiff it is contended that there was a contract for the payment of interest at eight per cent and for the payment of attorney's fees, it being asserted that the contract resulted from the dray receipts which were signed when the merchandise was delivered. The two dray receipts referred to were offered in evidence, and at the bottom of each the following appears: "Term: 30 days net. Purchaser agrees to pay eight percent interest from maturity on unpaid balance when account is past due. If the account is placed with a Collection medium the purchaser agrees to pay the fee of said medium which is hereby fixed at twenty percent of the amount of unpaid balance or a fee of $10.00, whichever is greater, and agrees to pay the further sum of $7.50 for suit fees if the matter is placed in litigation."
Unless there is a stipulation providing for conventional interest and providing for attorney's fees, there is no authority for the allowance of interest at a greater rate than the legal rate nor for the allowance of attorney's fees. Article 1938 of our Civil Code provides that debts shall bear interest at five per cent, unless otherwise stipulated, and Article 2924 provides that interest at a conventional rate may be stipulated for but not in excess of eight per cent and that this stipulation must be fixed in writing.
In Interstate Electric Co. v. Neugas, 3 La. App. 353, we held that such a printed provision in a bill sent after the original liability had been incurred could not be considered as a stipulation in writing to which the parties had agreed. There is a slight difference between that situation and the one which is presented here, for here the dray receipts were presented and were signed on behalf of the debtor when the goods were delivered. Still, we do not think that from this difference results a distinction.
We cannot overlook the fact that usually when merchandise is delivered to a place of business, the receiving clerk is asked to sign a slip which he is justified in believing is merely a receipt for the goods. And we do not think that a written provision, signed under those circumstances, can be tortured into an agreement that interest at more than the legal rate will be paid. The same may be said concerning attorney's fees.
We held in Leaman v. Rauschkolb, La. App., 199 So. 663, that a fee may be collected only when it is provided for by contract or by statute, citing Winkler v. Ascension Bank Trust Company, *Page 173 182 La. 69, 161 So. 23. We do not see that such a printed provision, under the circumstances set forth, can be considered as an agreement to pay such fees.
In the printed provisions, which we have quoted from the delivery receipt, there appears also a statement to the effect that in the event of suit the plaintiff would be entitled to a "suit fee" of $7.50. This was allowed in the judgment below, in addition to court costs. We are at a loss to understand just what is meant by "suit fee." A successful plaintiff is entitled to costs of court, and we find no justification, legal or otherwise, for the allowance of an additional suit fee even if we considered that the provisions of that receipt could be considered as a binding agreement.
It is therefore ordered, adjudged and decreed that the judgment appealed from, insofar as it runs against George E. Marshall, be and it is amended by the elimination of twenty per cent as attorney's fees and the elimination of $7.50 suit fee, and by the reduction of the rate of interest from eight per cent to five per cent, which shall be due only from judicial demand. In all other respects, the judgment appealed from is affirmed; costs of appeal to be paid by plaintiff-appellee, all other costs to be paid by defendant-appellant, George E. Marshall.
Amended and affirmed.